MANATT, PHELPS & PHILLIPS, LLP
ROBERT A. JACOBS (CA Bar No. 160350)
 rjacobs@manatt.com
NATHANIEL L. BACH (CA Bar No. 246518)
 nbach@manatt.com
EVAN D. COOPER (*pro hac vice* forthcoming)
 ecooper@manatt.com
2049 Century Park East, Suite 1700
Los Angeles, California 90067
Telephone:  310.312.4000
Facsimile:   310.312.4224

PRANA A. TOPPER (*pro hac vice* forthcoming)
 ptopper@manatt.com
7 Times Square, 23rd Floor
New York, NY 10036
Telephone:  212.790.4500
Facsimile:   212.790.4545

*Attorneys for Plaintiff*
BMG RIGHTS MANAGEMENT (US) LLC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| BMG RIGHTS MANAGEMENT (US) LLC d/b/a BMG APOLLO, d/b/a BMG BESPOKE SONGS, d/b/a BMG BESPOKE US, d/b/a BMG BESPOKE WORKS, d/b/a BMG BLUE, d/b/a BMG BUMBLEBEE, d/b/a BMG CICADA, d/b/a BMG DIAMOND SONGS, d/b/a BMG FIREFLY, d/b/a BMG GEMINI, d/b/a BMG GOLD SONGS, d/b/a BMG MERCURY, d/b/a BMG MONARCH, d/b/a BMG ONYX SONGS, d/b/a BMG PLATINUM SONGS US, d/b/a BMG PRODUCTION MUSIC US, d/b/a BMG PRODUCTION SONGS, d/b/a BMG PRODUCTION WORKS, d/b/a BMG RUBY SONGS, d/b/a BMG SAPPHIRE SONGS, d/b/a BMG SILVER SONGS, d/b/a BMG STERLING, d/b/a BMG TAMBORA, d/b/a BMG TITANIUM SONGS, d/b/a MUSIC OF WINDSWEPT, d/b/a SONGS OF WINDSWEPT PACIFIC, and d/b/a | Case No. 5:26-cv-02334

**COMPLAINT AND DEMAND FOR JURY TRIAL** |

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

WINDSWEPT PACIFIC SONGS,

        Plaintiff,

    v.

ANTHROPIC PBC,

        Defendant.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff BMG Rights Management (US) LLC, d/b/a BMG Apollo, d/b/a BMG Bespoke Songs, d/b/a BMG Bespoke US, d/b/a BMG Bespoke Works, d/b/a BMG Blue, d/b/a BMG Bumblebee, d/b/a BMG Cicada, d/b/a BMG Diamond Songs, d/b/a BMG Firefly, d/b/a BMG Gemini, d/b/a BMG Gold Songs, d/b/a BMG Mercury, d/b/a BMG Monarch, d/b/a BMG Onyx Songs, d/b/a BMG Platinum Songs US, d/b/a BMG Production Music US, d/b/a BMG Production Songs, d/b/a BMG Production Works, d/b/a BMG Ruby Songs, d/b/a BMG Sapphire Songs, d/b/a BMG Silver Songs, d/b/a BMG Sterling, d/b/a BMG Tambora, d/b/a BMG Titanium Songs, d/b/a Music Of Windswept, d/b/a Songs Of Windswept Pacific, and d/b/a Windswept Pacific Songs (individually and collectively, "BMG"), by its attorneys, Manatt, Phelps & Phillips, LLP, alleges the following in support of its claims and causes of action against Defendant Anthropic PBC ("Anthropic").

## NATURE OF THE ACTION

1.      BMG brings this action to right Anthropic's pervasive infringement of copyrighted musical compositions owned or controlled by BMG. Anthropic, a technology company known for developing a group of artificial intelligence ("AI") models known as Claude ("Claude" or "Claude models"), has unlawfully copied, prepared derivative works based on, and distributed musical compositions owned by BMG, among vast amounts of other copyrighted works. In so doing, Anthropic has blatantly violated the copyright laws and caused direct harm to BMG and the songwriters it proudly represents. Generations of inventors have brought revolutionary new products to market while complying with copyright law. Anthropic's rapid development of its new technology is no excuse for its egregious law-breaking.

2.      These claims are not new to Anthropic. BMG is one of many copyright holders who Anthropic's blatant disregard for U.S. copyright law has harmed. This

- 1 -

COMPLAINT AND DEMAND FOR JURY TRIAL

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

action follows others that have already shed light on Anthropic's pervasive infringements.[1] BMG seeks to rectify the damage Anthropic has done to BMG's rights and those of the songwriters it represents.

3. Anthropic was founded in or around 2021, when a group of OpenAI employees left to start a competing AI company. Anthropic's founders claimed to be starting a different kind of company, one with AI safety and research at the forefront that would mitigate AI's risks. But in its pursuit of those goals, Anthropic ran roughshod over the rights of countless creatives and rightsholders, using their works without permission, removing identifying information from those works, and keeping ill-gotten gains for itself. Among the works stolen by Anthropic in its rush to create a new AI behemoth are those owned or controlled by BMG—works created both by songwriters who are household names as well as those living check to check, all of whom BMG takes great pride in representing.

4. Anthropic's infringement of BMG's copyrighted musical compositions occurs throughout the lifecycle and development of its Claude models. Upon information and belief, this infringement began right from Anthropic's start and continues today. To first develop or "train" its Claude models, Anthropic copied an enormous volume of text from sources on the Internet through several means, including using automated scraping tools to copy text without authorization from public websites and through torrenting files from illegal online pirate libraries, as publicly available information indicates. Compounding its unlawful conduct, Anthropic also uploaded to the Internet and shared with the public additional copies of these pirated works through torrenting. Upon information and belief, this enormous collection of data downloaded and reshared by Anthropic includes

---

[1] *See, e.g.*, *See Bartz v. Anthropic PBC*, No. 3:24-cv-05417-AMO (N.D. Cal. Aug. 19, 2024); *Concord Music Group, Inc. v. Anthropic PBC*, No. 5:24-cv-03811-EKL (N.D. Cal. Jun 26, 2024) (*Concord I*); *Concord Music Group, Inc. v. Anthropic PBC*, No. 5:26-cv-00880-EKL (N.D. Cal. Jan 28, 2026) (*Concord II*).

COMPLAINT AND DEMAND FOR JURY TRIAL

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

unauthorized copies of BMG's copyrighted musical compositions.

5. Anthropic then processed this data to remove portions that it did not want to use to train its models, and, in doing so, created new unauthorized copies of BMG's musical compositions, upon information and belief. This "cleaning" process used extractor tools that removed copyright identifying information—known as Copyright Management Information ("CMI") under the Copyright Act.

6. Anthropic next copied this corpus of text—including BMG's copyrighted musical compositions that had been pirated by Anthropic—and processed the data through a variety of techniques to train or "encode" its Claude models. This process resulted in the models memorizing the text corpus and mapping out the distance between words so that the model could later predictably reproduce text in human-like response. During this encoding process, and upon information and belief, Anthropic removed any remaining CMI including from BMG's musical compositions.

7. Finally, upon information and belief, Anthropic "finetuned" the Claude models, in part through directing individuals to prompt the models and encourage certain preferred responses, including queries expressly calling for the replication of BMG's musical compositions. After completing the training process, Claude was then able to generate human-like outputs that resemble both the training data and finetuning processes used by Anthropic.

8. In addition to its unauthorized copying of BMG's copyrighted musical compositions and improper use of these compositions as inputs in training Claude, Anthropic infringes the compositions through Claude's outputs. Claude has reproduced unauthorized copies of and prepared unauthorized derivative works based on the lyrics in BMG's copyrighted musical compositions in response to user prompts, including prompts directly referring to BMG's compositions, upon information and belief. Anthropic's Claude generates those illicit copies and

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

COMPLAINT AND DEMAND FOR JURY TRIAL

prepares unauthorized derivative works in myriad ways, including, for example and upon information and belief, as text incorporated into other materials in response to user prompts requesting "original" songs.

9. Claude's outputs of BMG's lyrics typically omit CMI, upon information and belief, which also violates BMG's rights. This is intentional and by design. Because Anthropic strips much of the CMI from the works when it processes the text corpus, it knows that Claude will not have that information memorized and will not generate the CMI as output.

10. Anthropic's direct infringement goes beyond using BMG's copyrighted lyrics to train its Claude models and Claude's outputs. Anthropic unlawfully copied, downloaded, and retained unauthorized copies of pirated texts, including BMG's copyrighted musical compositions, in a general-purpose central library that Anthropic assembled and intended to maintain on an indefinite basis for its use, as set forth below. Anthropic's mass reproduction of these works—without permission and separate from Anthropic's use of any particular work as input or output related to Claude—constitutes a separate standalone act of infringement.

11. Anthropic's illegal conduct does not stop with these multiple direct infringements, upon information and belief. Anthropic also facilitates, encourages, and profits from copyright infringement by its licensees and users of its Claude models. Accordingly, Anthropic is secondarily liable—for contributory infringement and vicarious infringement—for the infringing acts of those licensees and users.

12. Anthropic unquestionably benefits financially from its blatant disregard of U.S. copyright law. In February 2026, Anthropic reported raising an additional $30 billion in new funding, with a resulting $380 billion valuation of the company. Beyond its enterprise value, Anthropic profits handsomely from its ecosystem of Claude models, as set forth below. Anthropic has monetized its large

- 4 -

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

language models to both individual end users and corporate customers. Anthropic has built that success on the ongoing unauthorized use of numerous copyrighted works, including those of BMG.

13. Anthropic pays nothing to BMG, its songwriters, or the significant number of other copyright owners Anthropic has illegally exploited to train Claude and create infringing outputs. And BMG has never authorized Anthropic to use its copyrighted compositions in connection with Claude. Nor has Anthropic ever attempted to license BMG's copyrighted musical compositions or even engaged in a dialogue with BMG about such uses. Rather, when BMG sent Anthropic a cease and desist letter in December 2025, Anthropic never responded.

14. Anthropic's infringement of BMG's lyrics causes significant and irreparable harm to BMG and the songwriters it represents, including those who have written the soundtrack to our lives. Anthropic has profited and continues to profit from its unauthorized use of BMG's copyrighted musical compositions while the authors of these works are left to watch their creative talents exploited without any compensation or acknowledgment. Accordingly, BMG brings this action to enjoin Anthropic's infringement and remedy the significant harm Anthropic has caused BMG and the songwriters it represents.

## THE PARTIES

15. BMG is a limited liability company organized under the laws of the state of Delaware with its principal place of business in New York, New York.

16. Anthropic is a Delaware corporation with its principal place of business in San Francisco, California.

## JURISDICTION, VENUE, AND DIVISIONAL ASSIGNMENT

17. The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) because the claim alleged herein arises under the Copyright Act of 1976, 17 U.S.C. §§ 101 *et seq.*

- 5 -

18.    Venue is proper in this District under 28 U.S.C. §§ 1391(b) and/or 1400 because Anthropic resides or may be found in this District; because Anthropic conducts, transacts, and solicits business in this District; and because a substantial part of the events or omissions giving rise to the claim occurred in this District.

19.    Anthropic is subject to personal jurisdiction in the State of California because it is headquartered in the State and does systematic and continuous business in the State; because the claims herein relate to or arise out of infringing activities that Anthropic purposefully directed toward or conducted in the State; and because the exercise of personal jurisdiction over Anthropic is just and reasonable.

20.    Assignment of this action to the Court's San Jose Division is appropriate because of BMG's anticipated forthcoming administrative motion pursuant to Civ. L.R. 3-12 to designate this action as related to two other actions currently pending in this Court's San Jose Division against the same defendant, *Concord I*, No. 5:24-cv-03811-EKL (N.D. Cal. Jun 26, 2024), and *Concord II*, No. 5:26-cv-00880-EKL (N.D. Cal. Jan 28, 2026). This action and the two currently pending actions "concern substantially the same parties, property, transaction, or event" and it "appears likely that there will be an unduly burdensome duplication of labor and expense or conflicting results if the cases are conducted before different Judges".

## FACTUAL BACKGROUND

### I.    BMG AND ITS COPYRIGHTS

21.    BMG, founded in 2008, has risen to be the fourth-largest music company in the world and a trusted partner for songwriters throughout their careers. BMG has partnered with some of the most notable songwriters today to those just beginning their career in music.

22.    BMG owns or controls, in whole or in part, exclusive rights to nearly four million musical compositions, from the most well-known, chart-topping hits to

- 6 -

the imaginative works of up-and-coming composers and lyricists. BMG represents and advocates for thousands of songwriters who have helped create those works. BMG knows that great music starts with great songwriting, and is committed to supporting and protecting the creative works its songwriters have entrusted to it.

23. As a publisher, BMG regularly enters into licenses and other agreements for the works it owns, through which BMG compensates its songwriters for their share of earnings. BMG's songwriters rely on the income received from these transactions to support their livelihood and art. This system of licensing, permissions, and authorized use is the backbone of the music publishing industry, and ensures that the songwriters and publishers who have invested in developing creative works receive compensation for the use of these works.

24. U.S. copyright law is not an "opt out" system in which technology platforms like Anthropic have the right to infringe first and wait for artists and rightsholders to object. Indeed, BMG and its songwriters rely on U.S. copyright law to protect their works from infringement. Without such protections, the music publishing industry as we know it could not function because songwriters would be unable to profit from their work, and because publishers like BMG would lack the financial ability and incentive to invest in the careers and promote the works of their songwriters.

25. When BMG licenses its copyrighted lyrics, its licensees, including lyrics aggregator websites, ordinarily provide the corresponding song title, songwriter(s), and other identifying information. Such copyright management information is essential for informing consumers about the authors of musical works including so they know where to find more of the music they enjoy. It also serves as a key protection for authors and publishers by ensuring that they receive credit for their creative works, and that the works enjoy copyright protection. Any removal or alteration of CMI by unlicensed parties violates these rights and harms

- 7 -

COMPLAINT AND DEMAND FOR JURY TRIAL

the interests of BMG and its songwriters. It also violates the Copyright Act.

26.    BMG owns or controls, in whole or in part, exclusive rights to millions of valuable musical compositions pursuant to contracts with songwriters and other rightsholders. Those works include the compositions listed in Exhibits A and B, which are non-exhaustive, exemplary lists of musical compositions in which BMG, in whole or in part, owns or, as an exclusive licensee, controls the U.S. copyright, and that Anthropic has infringed.

27.    Each work listed in Exhibits A and B constitutes an original work or copyrightable subject matter under the Copyright Act, 17 U.S.C. § 101 *et seq.*, which has been registered with the U.S. Copyright Office. The copyrights for each of the musical compositions in Exhibits A and B remain valid and subsisting, and have been owned and/or controlled by BMG, in whole or in part, at all times relevant to the allegations in this Complaint.

## II.    ANTHROPIC AND ITS ILLEGAL CONDUCT

### A.    Anthropic's Founding and Development of its Claude LLMs

28.    Founded in 2021 by a group of former OpenAI executives, Anthropic is a corporation that develops, operates, sells and licenses AI programs. Anthropic announced in February 2026 that it is valued at $380 billion[2]—a fortune built on stolen copyrighted works, including those owned by BMG. Anthropic bills itself as an AI safety and research company, and claims that "[s]haping the future of AI . . . is a responsibility and a privilege."[3] But Anthropic's platitudes are at odds with its unlawful actions. Anthropic developed its products from unlicensed musical works, regurgitates those same works to the public without credit, and has categorically

---

[2] "Anthropic raises $30 billion in Series G funding at $380 billion post-money valuation," *Anthropic*, https://www.anthropic.com/news/anthropic-raises-30-billion-series-g-funding-380-billion-post-money-valuation (Feb. 12, 2026).

[3] "Making AI systems you can rely on," *Anthropic*, https://www.anthropic.com/company (last visited Mar. 16, 2026).

- 8 -

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

refused to compensate their legal owners.

29. Anthropic's primary products are its AI models known as Claude, a series of general-purpose large language models ("LLMs"). LLMs are computer models designed to comprehend and generate natural human language text. Anthropic develops the models by feeding an enormous amount of text inputs, including BMG's musical compositions, into the models in a process commonly referred to as "training". Claude is then able to recognize user text prompts and queries, and to generate output responses in a conversational format resembling human writing, based on the text and other data on which the models were trained.

30. The more material on which an LLM is trained, the better it performs. AI companies like Anthropic therefore have engaged in a race to vacuum up as much existing content as possible in order to make their LLMs as powerful and capable as possible. Such companies are incentivized to run roughshod over the rights of the owners of such content because, they believe, they will fall behind in the AI arms race if they do not and will not be able to attract eye-watering valuations.

31. Anthropic began developing and training its Claude models as early as February 2021, and released a series of LLMs beginning in 2022, first to certain limited business partners, and then in 2023, to the wider public. Soon thereafter, Anthropic released additional versions of the Claude model, and has continued to release new Claude models, including two new models in February of this year, all the while, upon information and belief, training each of its models on a newly copied training corpus with unlicensed copyrighted works, including those owned by BMG.

32. To train Claude, Anthropic first copies an enormous volume of text from the Internet, as well as other sources like scanned books. Anthropic uses several methods to collect text from Internet sources, including automated tools like

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

COMPLAINT AND DEMAND FOR JURY TRIAL

web crawlers that copy and download text and data to Anthropic's servers (a process called "scraping"), and torrenting through the BitTorrent protocol from illegal online pirate libraries, including Library Genesis ("LibGen") and Pirate Library Mirror ("PiLiMi"), among others. These massive collections of text downloaded by Anthropic include copies of BMG's copyrighted musical compositions.

33. Next, Anthropic processes the downloaded text to "clean" or remove portions that it does not want used to train its Claude models. This cleaning process employs extractor tools that remove copyright notices and other CMI identifying copyrighted materials, its authors and owners, among other details, including, upon information and belief, for BMG's musical compositions. For example, publicly available information indicates that Anthropic tested and used at least three different extraction programs—including Readability, Newspaper, and jusText—to remove text from the footers of documents where CMI usually appears. Upon information and belief, Anthropic determined that jusText did not do a good enough job to remove CMI from a scraped Internet page as Anthropic wanted, leaving in what it called "useless junk" or "boilerplate".[4] Anthropic believed Newspaper did a better job removing CMI, including footnotes containing identifying information, copyright owner names, and copyright notices. Upon information and belief, based on Newspaper's superior CMI removal abilities, Anthropic intentionally deployed and continues to use this tool to remove CMI from documents in its training corpuses, including BMG's copyrighted musical compositions.

34. Anthropic then copies this corpus of text, including BMG's copyrighted musical compositions, and processes the data through a variety of

---

[4] *See Concord I*, Dkt. No. 419-1 at ¶ 7.

- 10 -

COMPLAINT AND DEMAND FOR JURY TRIAL

techniques to train its Claude models and/or establish the value of parameters that form the models. That process involves "encoding", a method by which Anthropic breaks down and converts text into "tokens"—words or portions of words—for storage. Anthropic then translates the tokens into "vectors", which are a sequence of numbers used to recognize each token in the models' algorithms. Anthropic calculates the vectors based on each token's proximity to other tokens in the training corpus, *i.e.*, a calculation of how close words appear to other specific words, revealing to the model words with similar meanings and uses. Upon information and belief, during this encoding process Anthropic removes any remaining CMI, including for BMG's musical compositions.

35.    Finally, Anthropic "finetunes" the Claude models through "reinforcement learning" using human and AI feedback, a process that can include further copying of the training corpus, including BMG's compositions. As part of this process, Anthropic hires and directs humans to enter prompts into Claude to encourage outputs that align with Anthropic's goals for the algorithm. Upon information and belief, such human prompts included queries expressly calling for the replication of BMG's copyrighted text. The finetuning process also includes the further use of input training sets to adjust the models' values.

36.    After completing the training process, Claude is able to generate human-like outputs that resemble the syntax, character and text of Anthropic's training corpus and finetuning processes.

**B.    Anthropic's Improper and Infringing Conduct**

37.    Anthropic infringes BMG's copyrights and violates the Copyright Act in multiple ways, including at least the following:

**i.    Anthropic's Infringement by Training**

38.    Anthropic has infringed BMG's copyrights in the training of its AI models. Anthropic creates and uses unauthorized copies of BMG's copyrighted

- 11 -

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

musical compositions in order to develop training sets for and to train Claude.

39.    As described above, the training process for Claude involves the use of an enormous amount of text to amass a training corpus, which includes copyrighted compositions owned by BMG that Anthropic scraped, downloaded or took by other means from publicly available and/or pirated sources on the Internet.

40.    While Anthropic has closely guarded the specific sources of text that it uses to train Claude, the company has admitted that it trains its Claude models on "a proprietary mix of publicly available information on the Internet" and "non-public data from third parties, data provided by data labeling services and paid contractors, and data [it] generate[s] internally."[5] Most recently, Anthropic admitted that it trained its new Claude Sonnet 4.6 model, released on February 17, 2026, and Claude Opus 4.6 model, released on February 5, 2026, on "a proprietary mix of publicly available information from the Internet up to May 2025, non-public data from third parties, data provided by data-labeling services and paid contractors, data from Claude users who have opted in to have their data used for training, and data generated internally at Anthropic."[6] Anthropic refuses to disclose the specific mix of training data and its sources in an effort to conceal its knowing copying of

---

[5] *See, e.g.*, *Claude 3.7 Sonnet System Card*, Anthropic (Feb. 25, 2025), https://assets.anthropic.com/m/785e231869ea8b3b/original/claude-3-7-sonnet-system-card.pdf; *see also The Claude 3 Model Family: Opus, Sonnet, Haiku*, at 3, Anthropic, https://assets.anthropic.com/m/61e7d27f8c8f5919/original/Claude-3-Model-Card.pdf; *Model Card and Evaluations for Claude Models*, at 2, Anthropic, https://www-cdn.anthropic.com/5c49cc247484cecf107c699baf29250302e5da70/claude-2-model-card.pdf.

[6] *System Card: Claude Sonnet 4.6*, Anthropic (Feb. 17, 2026), https://www-cdn.anthropic.com/78073f739564e986ff3e28522761a7a0b4484f84.pdf; *System Card: Claude Opus 4.6*, Anthropic (Feb. 10, 2026), https://www-cdn.anthropic.com/c788cbc0a3da9135112f97cdf6dcd06f2c16cee2.pdf; *see also System Card: Claude Haiku 4.5*, Anthropic (Oct. 2025), https://www-cdn.anthropic.com/7aad69bf12627d42234e01ee7c36305dc2f6a970.pdf (stating similar training bases for Anthropic's Claude Haiku 4.5 model, released October 15, 2025).

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

COMPLAINT AND DEMAND FOR JURY TRIAL

copyrighted materials, including copyrighted musical compositions owned by BMG, without permission and its knowing illegal removal of CMI for such works.

41.    That Claude has been capable of generating and has generated outputs of nearly exact replicas of BMG's lyrics in response to prompts shows that Anthropic trained Claude on BMG's copyrighted musical compositions. But for Anthropic's copying and use of those compositions' lyrics to train its AI models, Claude could not recite copies of BMG's works as outputs. For example and upon information and belief, Claude users have requested the lyrics to and received output from Claude containing all or significant portions of lyrics from BMG-owned or controlled musical compositions, including "What a Wonderful World", "Kryptonite", "You Can't Always Get What You Want", and "Uptown Funk".

42.    One source of text that Anthropic has admitted that it has used for its training sets is the "Common Crawl" dataset.[7] Upon information and belief, the Common Crawl dataset includes BMG's copyrighted lyrics that were scraped from the Internet, including from websites maintained by BMG's licensees authorized to display BMG's copyrighted lyrics, such as MusicMatch and LyricFind.[8] Upon information and belief, and based on public information, Anthropic also downloaded and used a dataset called "The Pile" to train its Claude models.[9] The Pile is a dataset "designed for training large scale language models," and comprised

---

[7] *See* Amanda Askell *et al.*, *A General Language Assistant as Laboratory for Alignment*, 8, 27, Anthropic (Dec. 9, 2021), https://arxiv.org/pdf/2112.00861

[8] Kevin Schaul *et al.*, *Inside the secret list of websites that make AI like ChatGPT sound smart*, Washington Post (Apr. 12, 2023), https://www.washingtonpost.com/technology/interactive/2023/ai-chatbot-learning/.

[9] Annie Gilbertson *et al.*, *Apple, Nvidia, Anthropic Used Thousands of Swiped YouTube Videos to Train AI*, Proof (Jul. 16, 2024), https://www.proofnews.org/apple-nvidia-anthropic-used-thousands-of-swiped-youtube-videos-to-train-ai/.

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

COMPLAINT AND DEMAND FOR JURY TRIAL

of various pre-existing "high-quality datasets," including the Books3 dataset.[10] The Books3 dataset is well known to be comprised of hundreds of thousands of pirated books obtained through torrenting and, upon information and belief, contains BMG's works, including, by way of example, "You Can't Always Get What You Want" through the book *Rolling Stones - Sheet Music Anthology*, and "Beauty And A Beat", through *Justin Bieber - Believe (songbook)*, among others.[11] The Pile also includes a dataset of "YouTube Subtitles," comprised of "all human generated closed captions" for 173,651 YouTube videos, which likewise contains the lyrics of BMG works, including "7 Rings" and "Rain On Me."[12] Upon information and belief, Anthropic copied both the Common Crawl and The Pile datasets and processed the information for use in its own training data. During that processing, Anthropic intentionally used extraction algorithms to remove or alter CMI accompanying BMG's lyrics, including the copyright notice, copyright owner names, songwriter credits, performing artist name, and song title. The contents of The Pile and the Common Crawl datasets are publicly known, and, therefore, Anthropic knew or should have known that when it copied those datasets that they included BMG's copyrighted works and associated CMI.

43.    Upon information and belief, Anthropic also built its training corpus for Claude from information that Anthropic itself scraped and copied from the Internet without permission, including from BMG's licensees that were authorized

[10] Leo Gao *et al.*, *The Pile: An 800GB Dataset of Diverse Text for Language Modeling,* 2, ARXIV (Dec. 31, 2020), https://arxiv.org/pdf/2101.00027.

[11] *See* Alex Reisner, *Revealed: The Authors Whose Pirated Books Are Powering Generative AI*, The Atlantic (Aug. 19, 2023), https://www.theatlantic.com/technology/archive/2023/08/books3-ai-meta-llama-pirated-books/675063/; *AI Watchdog: Books3*, The Atlantic (Sept. 10, 2025), https://www.theatlantic.com/technology/archive/2025/09/dataset-books3/683662/.

[12] Leo Gao, *supra*; Annie Gilbertson, *supra*; Alex Reisner, *Search the YouTube Videos Secretly Powering Generative AI*, Proof (Jul.16, 2024), https://www.proofnews.org/youtube-ai-search/.

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

to publish copies of BMG's works, such as MusixMatch.com and LyricFind.com, and containing BMG's works.

44.     Anthropic also obtained copies of books for use as training data, and for other purposes, through a book-scanning program led by the former leader of Google's book-scanning program, Tom Turvey, whom Anthropic tasked with "obtaining 'all the books in the world.'"[13] At Anthropic, after briefly pursuing a plan to obtain copies of properly licensed books from publishers, Turvey let those conversations with publishers "wither," and instead began a program to purchase millions of print books for digitization.[14] Upon purchasing these books, Anthropic, through third-party service providers, stripped them of their bindings, cut their pages to size, and scanned them into digital form. Through this process, Anthropic created unauthorized PDF copies of each of those print books containing images of the scanned pages with machine readable text, which, upon information and belief, included numerous songbooks and sheet music collections containing BMG's works, among others. While Anthropic may have modeled its book digitization program on Google's, its motives bore little resemblance. Unlike Google's effort to create a not-for-profit searchable database that allows the broader public to discover books of interest, Anthropic created these unauthorized scanned copies of books to further its own valuation and profits through AI training and other unauthorized uses.

---

[13] *See Bartz v. Anthropic PBC*, 787 F. Supp. 3d 1007, 1015-16 (N.D. Cal. 2025); Aaron Schaffer, *et al.*, *Inside an AI start-up's plan to scan and dispose of millions of books*, The Washington Post (Jan. 27, 2026), https://www.washingtonpost.com/technology/2026/01/27/anthropic-ai-scan-destroy-books/.

[14] *Bartz*, 787 F. Supp. 3d at 1015-16.

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

COMPLAINT AND DEMAND FOR JURY TRIAL

### ii. Anthropic's Further Pre-Training and Training Infringement

45. Anthropic made and makes additional copies of BMG's copyrighted lyrics, without permission, when it cleans, processes, trains with, encodes with, and/or finetunes the data input into Claude models, further violating BMG's copyrights.

46. During the cleaning phase of preparing the text corpus for use in training—a process that involved stripping unwanted text like BMG's CMI—Anthropic creates additional copies of BMG's works. Anthropic then creates more copies of this resulting text corpus, still including BMG's copyrighted works, when it encodes the Claude models. Anthropic makes further unauthorized copies when it finetunes the Claude models, as described above.

### iii. Anthropic's Infringement via Torrenting, BitTorrent and Central Library

47. Anthropic made unauthorized copies of BMG's works via BitTorrent, both by downloading and uploading BMG-owned works. As revealed in 2025 in another lawsuit against Anthropic,[15] Anthropic downloaded, without the permission of copyright owners, millions of copies of copyrighted books via torrenting, using the BitTorrent protocol, from illegal pirate library sites. These files included books, songbooks and sheet music that contain BMG's copyrighted works, that Anthropic used for its training sets, among other uses, as set forth below. Anthropic used torrenting to obtain these files, instead of properly licensing copyrighted works, to avoid a "legal/practice/business slog," according to Anthropic co-founder and CEO Dario Amodei.[16]

48. Anthropic's illegal torrenting from online pirate libraries—also

---

[15] *See Bartz v. Anthropic PBC*, 791 F. Supp. 3d 1038, 1046 (N.D. Cal. 2025).

[16] *Bartz*, 787 F. Supp. 3d at 1015–16, 1026.

- 16 -

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

referred to as shadow libraries—included, but was not limited to, an Anthropic co-founder's downloading and copying at least 196,640 copies of copyrighted books from the Books3 shadow library, in early 2021; an Anthropic's co-founder's use of BitTorrent to download and copy at least five million copies of copyrighted books from the LibGen shadow library, in June 2022; and Anthropic's downloading and copying through torrenting of at least two million other copies of copyrighted books from the PiLiMi shadow library, in July 2022, all without the permission of the copyright owners.[17]

49.     BitTorrent is a peer-to-peer file sharing protocol that its users employ to make unauthorized copies of and to unlawfully distribute and receive copyrighted content. BitTorrent operates by breaking files into multiple pieces for immediate and simultaneous distribution between multiple users. Once users download one of those pieces, they instantaneously begin to distribute copies of that file to other BitTorrent users. As such, when Anthropic downloaded copies of pirated books and texts, Anthropic simultaneously uploaded to other BitTorrent users numerous additional unauthorized copies of the same books and texts containing BMG's copyrighted works, thereby making additional copies of BMG's works and infringing them in multiple ways. This, in and of itself, represents a further and separate violation of rights that BMG holds in its copyrighted works, apart from Anthropic using the results of torrenting for training its Claude models and other purposes.

50.     Anthropic copied and retained a set of the torrented pirated works, as well as the works it obtained from other sources such as The Pile and scanned versions of print works, in a general-purpose central library independent from its

---

[17] *Bartz*, 791 F. Supp. 3d at 1046.

COMPLAINT AND DEMAND FOR JURY TRIAL

training of Claude.[18] Anthropic intended to keep this central library forever, for use for any future purpose.[19] Upon information and belief, Anthropic maintained and stored copies of these files in the central library in the same format as they had originally torrented or otherwise obtained them. Anthropic exploited this central library of pirated works for several purposes, one of which was to develop its commercial products, including Claude. Anthropic never paid for or obtained consent from copyright owners, including BMG, to develop its library of stolen works.

51.    Upon information and belief, Anthropic chose certain, but not all, written works from this central library to include in the text dataset that it used to train its Claude models. Notwithstanding any later use of those works for Claude training purposes, Anthropic retained pirated copies of those works as part of its central library with the intent to store them "forever."[20] Anthropic's actions in this regard constitute further independent, separate acts of infringement.

52.    For example, and upon information and belief, BMG's works that Anthropic improperly torrented include copyrighted musical compositions such as "Rain on Me", "Sympathy for the Devil", and "Grenade".

53.    Discovery will demonstrate the full extent of Anthropic's improper torrenting, copying and storage of BMG's copyrighted works in the foregoing infringing activities.

### iv.    Anthropic's Infringing Outputs

54.    Anthropic has infringed BMG's copyrighted musical compositions through Claude's outputs, including outputs comprised of nearly identical copies of

---

[18] *Bartz*, 787 F. Supp. 3d at 1016.

[19] *Bartz*, 791 F. Supp. 3d at 1047.

[20] *Bartz*, 787 F. Supp. 3d at 1016.

- 18 -

COMPLAINT AND DEMAND FOR JURY TRIAL

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

BMG's lyrics, in whole or in part, without Anthropic having obtained consent to produce any such copies and/or any derivative works based on such compositions.

55. Upon information and belief, numerous third-party users have prompted Claude with respect to such BMG lyrics and, in response, received outputs copying those lyrics, without BMG's authorization and in violation of its copyrights. Upon information and belief, Claude has also generated copies of BMG's song lyrics even when user prompts do not specifically request or relate to the BMG musical compositions containing them.

56. Upon information and belief, even when prompted for "new" or "original" song lyrics, Claude generates outputs incorporating unauthorized copies of and/or derivative works based on BMG's copyrighted lyrics that Anthropic copied into training sets. Such unauthorized copies and/or derivative works result from, among other things, Claude combining various songs into a single song as a mash-up in response to user prompts requesting such a combination or new songs.

57. Anthropic knows about and intended for Claude to provide these types of infringing outputs. Indeed, publicly available information has revealed company messages predating Claude's public release showing that an Anthropic employee prompted Claude to "[w]rite a coherent poem made up of fragments" of "lyrics from Beatles, Bob Dylan, and other classics from the 60s/70s."

58. Anthropic also knew or should have known that Claude would produce copies of BMG's copyrighted lyrics in its outputs by virtue of the fact that Anthropic knowingly included unauthorized copies of those lyrics in the training sets that it used to encode Claude.

59. For example, several of Anthropic's senior employees were aware, based on their own research, of the inevitability that Claude would memorize the training corpus, including BMG's compositions, and produce copies of those inputs in its responses. In July 2020, individuals who were then employees of OpenAI and

- 19 -

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

later went on to become senior employees of Anthropic, including Dario Amodei, Amanda Askell, Jack Clark, Jared Kaplan, and Benjamin Mann, explained that "[a] major methodological concern with language models pretrained on a broad swath of internet data, particularly large models with the capacity to memorize vast amounts of content, is potential contamination of downstream tasks by having their test or development sets inadvertently seen during pre-training"[21]—meaning that LLMs like Claude memorize a huge volume of information that influences their later outputs.

60.    Upon information and belief, senior executives at Anthropic intentionally prompted Claude to reproduce copyrighted copies of song lyrics prior to Claude's public release. For example, publicly available information indicates that in February 2022, just before Claude's release, Anthropic's co-founder and Chief Compute Officer Tom Brown asked, "@Claude what are the lyrics to desolation row by [Bob] Dylan?". Anthropic's intentional prompting of Claude for song lyrics in this manner reflects its knowledge that Claude would reproduce unauthorized copies of and/or derivative works based on copyrighted works, including BMG's.

61.    Anthropic intentionally designed Claude to respond with copyrighted song lyrics, in part, during the finetuning process. Publicly available information indicates that individuals paid and directed by Anthropic to finetune the models prompted Claude to rewrite the songs "Listen" in "Eminem['s] style" and "Not Afraid" in "Beyonce's style," thereby intending for Claude to generate copies of copyrighted song lyrics in its outputs. Anthropic's own documents show that it directed temporary employees charged with prompting Claude during the finetuning process to give the model tasks, including "suggesting songs based on

---

[21] Tom B. Brown *et al.*, *Language Models are Few-Shot Learners* 8–9, ARXIV (July 22, 2020), https://arxiv.org/pdf/2005.14165.

COMPLAINT AND DEMAND FOR JURY TRIAL

your favorite music" or "ask[ing] models to re-write text with style, content, and formatting changes or requests."[22] Upon information and belief, those temporary employees went on to prompt the Claude models for song lyrics, including BMG's. At Anthropic's direction, those temporary employees hired to finetune Anthropic's models encouraged Claude to output copies of song lyrics, including, upon information and belief, those owned by BMG, without regard to whether Claude would infringe others' copyrights.

62.    Despite knowing from both the contents of its training corpus and its finetuning process that Anthropic's LLMs would reproduce copyrighted musical compositions and lyrics and that users would prompt the model to reproduce such information, Anthropic did not place guardrails on its models that prevented Claude from infringing BMG's copyrights prior to first releasing the model for public use.

63.    Following its release, Claude produced copies of BMG's song lyrics in response to a range of user queries, precisely as Anthropic knowingly and intentionally designed its Claude models to do, including, upon information and belief, for "What a Wonderful World", "You Can't Always Get What You Want", and "Uptown Funk". Discovery will demonstrate the full extent of infringing outputs generated by Anthropic's Claude models, including in response to third-party Claude users' queries, with respect to BMG's copyrighted works.

64.    Anthropic could have excluded BMG's copyrighted lyrics from the corpus of text used to train Claude in order to prevent Claude from producing illicit copies of and derivative works based on BMG's works. Anthropic selects what data to use as inputs, knowing that the training corpus will impact Claude's outputs. As explained above, Anthropic also cleans the corpus of materials that it does not want

---

[22] Yuntao Bai *et al.*, *Training a Helpful and Harmless Assistant with Reinforcement Learning from Human Feedback*, 65–67, ARXIV (Apr. 12, 2022), https://arxiv.org/pdf/2204.05862.

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

COMPLAINT AND DEMAND FOR JURY TRIAL

used for training, including removing or altering CMI. Anthropic could have excluded or removed BMG's copyrighted materials from the training set at either stage, but did not do so.

65.    From the start, Anthropic also could have (i) placed guardrails on Claude to prevent the models from producing copies and derivative works based on BMG's copyrighted works; (ii) modified prompts that might result in such infringing outputs; and/or (iii) stopped Claude from responding to certain types of prompts.

66.    Until separate ongoing lawsuits exposed Anthropic's infringing conduct, Anthropic implemented few or only limited guardrails, which rarely prevented Claude from providing infringing outputs. Upon information and belief, even when those guardrails resulted in Claude declining to provide infringing copies of materials in its outputs and informing users that certain materials were protected by copyright, the guardrails were subsequently bypassed by users re-prompting Claude for the content. In any event, the guardrails themselves confirm that Anthropic knew that it had trained Claude on copyrighted materials, including BMG's lyrics, because the guardrails would not have been necessary in the first place but for such training. Because Anthropic also monitored user patterns and queries, upon information and belief, Anthropic also knew third party users asked Claude to provide copies of and/or prepare derivative works based on copyrighted materials and knew that Claude unlawfully generated copies of and/or derivative works based on those works in its outputs.

67.    Upon information and belief, and in response to *Concord I*, a separate ongoing litigation concerning Anthropic's infringing behavior, Anthropic developed additional guardrails on its LLMs to limit its infringing conduct (and agreed to maintain those guardrails via a January 2, 2025 ordered stipulation with the *Concord I* plaintiffs), and in so doing further collected and monitored data

- 22 -

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

concerning user prompts and Claude's outputs. Through that data collection, upon information and belief, Anthropic became additionally aware of specific instances of user behavior prompting Claude for copyrighted works. Upon information and belief, Anthropic examined third-party users' efforts to circumvent these guardrails and identified cases in which Anthropic's guardrails did not prevent Claude from providing infringing output, including of BMG's lyrics.

68.    Upon information and belief, the new guardrails that Anthropic introduced for Claude in response to *Concord I* still do not prevent all prompts and outputs from generating unauthorized copies of and/or derivative works based on copyrighted works, including works owned by BMG. For example, upon information and belief, the newer guardrails only prevent output related to a specific list of songs (those mentioned in *Concord I*), meaning that they do not prevent the output of lyrics not included in that limited selection. These guardrails also do not prevent users from prompting Claude for new songs derived from an existing song, and do not prevent Claude from generating outputs that continue to reproduce and/or prepare derivative works based on copyrighted works, including those owned by BMG, and infringe its copyrights when not specifically requested by users. In addition, these newer guardrails, when effective, concern only Claude's output and do nothing to remedy Anthropic's original sin of infringing BMG's copyrights in its training, torrenting, and other processes. Discovery will demonstrate the full extent of Anthropic's failure to implement guardrails that prevent infringement of BMG's copyrighted works.

69.    Anthropic's development or placement of additional guardrails demonstrates that it understood its responsibility to take steps to prevent its users from infringing copyrighted works in their interactions with the Claude models, and Anthropic's technical ability to implement such limitations.

70.    Anthropic's development of guardrails to limit Claude's reproduction

- 23 -

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

of and/or preparation of derivative works based on copyrighted works, including BMG's lyrics, reflects Anthropic's knowledge that the copyright laws protect lyrics, and that reproducing and/or preparing derivative works based on these works is unlawful. Yet, Anthropic has failed to stop its infringing behavior. And Anthropic was further aware of its own infringing conduct through its monitoring of user prompts and Claude outputs but did not take sufficient steps to prevent those continued infringements.

71. Anthropic's terms of service also reflect its knowledge of its infringing conduct because they confirm that Anthropic agreed to indemnify certain Claude users in copyright infringement lawsuits in which Anthropic is secondarily liable. Specifically, on December 19, 2023, Anthropic announced new Commercial Terms of Service containing "an expanded copyright indemnity," pursuant to which Anthropic agreed to defend commercial customers accessing Claude as an Application Programming Interface ("API") "from any copyright infringement claim made against them for their authorized use of our services or their outputs, and . . . pay for any approved settlements or judgments that result."[23] Although Anthropic has updated those terms since then, its most recent terms still indemnify commercial customers from any "third-party claim, suit, or proceeding alleging that Customer's paid use of the Services (which includes data Anthropic has used to train a model that is part of the Services) in accordance with these Terms or Outputs generated through such authorized use violates any third-party intellectual property

[23] *Announcements: Expanded legal protections and improvements to our API*, Anthropic (Dec. 19, 2023), https://www.anthropic.com/news/expanded-legal-protections-api-improvements; *Commercial Terms of Service*, Anthropic (Jan. 2024), https://web.archive.org/web/20231219200425/https://www-files.anthropic.com/production/images/Anthropic-Commercial-Terms-of-Service_Dec_2023.pdf?dm=1703004244.

- 24 -

COMPLAINT AND DEMAND FOR JURY TRIAL

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

right."[24] Since 2023, the policy has excluded "use of the Services or Outputs in a manner that [a] Customer knows or reasonably should know violates or infringes the rights of others," but regardless indicates that "authorized" uses of the Claude API will produce outputs that infringe copyrighted works. Anthropic, thus, knows or has reason to know that third party users of Claude infringe copyrighted works—including BMG's—even when those users comply with Anthropic's terms and conditions.[25]

### v.    **Anthropic's Unlawful Removal of BMG's CMI**

72.    As explained above, Anthropic also violates U.S. Copyright law by removing and altering CMI for BMG's lyrics and knowingly copying and distributing BMG's lyrics with altered or removed CMI without BMG's consent and in violation of the Copyright Act, all while knowing and/or having reason to know that such actions will induce, facilitate, or conceal infringement.

73.    When BMG licenses its musical compositions to lyrics aggregators and other third parties, the CMI that accompanies such content, including the song title, songwriter name(s), and other identifying information, is necessary and essential to ensure that BMG and its songwriters receive proper credit and compensation.

74.    When Anthropic scrapes, torrents, or otherwise obtains BMG's copyrighted lyrics, it intentionally alters or removes BMG's CMI from lyrics using extraction tools, including Newspaper, as set forth above. Anthropic also employs third-party data sets in its training process, the CMI for which Anthropic knows has

---

[24] *Commercial Terms of Service*, Anthropic (Effective June 17, 2025), https://www.anthropic.com/legal/commercial-terms.

[25] *Commercial Terms of Service*, Anthropic (Effective June 17, 2025), https://www.anthropic.com/legal/commercial-terms; *Commercial Terms of Service*, Anthropic (Jan. 2024), https://web.archive.org/web/20231219200425/https://www-files.anthropic.com/production/images/Anthropic-Commercial-Terms-of-Service_Dec_2023.pdf?dm=1703004244.

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

COMPLAINT AND DEMAND FOR JURY TRIAL

been altered or removed and/or has altered or removed itself. Upon information and belief, Anthropic knowingly removed or altered CMI from torrented works as it did with copies of BMG's works that Anthropic pirated from various other sources. Anthropic intentionally removes CMI, which Anthropic views as "useless junk" or "boilerplate", before using BMG's lyrics to train Claude because its goal is for Claude to copy BMG's expressive content without any associated CMI.

75. Anthropic further knowingly and intentionally alters or removes BMG's CMI without authorization when Claude produces copies of and/or prepares derivative works based on BMG's lyrics as outputs. Anthropic knows that BMG's CMI will not appear in these outputs because Anthropic removed that information by using extraction software during the training process or knowingly using third-party datasets containing BMG's lyrics previously stripped of their CMI.

76. By removing and altering BMG's CMI in this fashion, Anthropic knowingly conceals its infringement of BMG's copyrights both during the training of Claude and in Claude's output of copies of and/or derivative works based on BMG's lyrics. Anthropic's concealment of its infringement through the removal of BMG's CMI enables and facilitates additional infringements by Anthropic's users, whom Anthropic does not inform about BMG's ownership interest in the lyrics used in Claude's outputs. Through such conduct, Anthropic steers consumers away from properly licensed sources offering BMG's lyrics, thereby reducing BMG's licensing revenues.

77. BMG has never licensed or authorized Anthropic to reproduce or use in any manner its copyrighted lyrics, including as inputs or outputs for Claude. Anthropic's exploitation of BMG's musical compositions is entirely without permission or consent.

## C. Anthropic's Profits From Its Illegal Conduct

78. Anthropic has profited immensely through its improper exploitation of

- 26 -

BMG's copyrighted works.

79. Anthropic has become one of the largest AI companies in the world and continues to grow rapidly. The increases in Anthropic's valuation have been staggering. After receiving a valuation of $18.5 billion in February 2024, that figure jumped to $61.5 billion in March 2025.[26] Just six months later, Anthropic's valuation rose to $183 billion, and has more than doubled in value since.[27]

80. Anthropic recently reported raising an additional $30 billion in new funding, resulting in a $380 billion valuation of the company.[28] That valuation followed on the heels of a $350 billion valuation just one month earlier when Anthropic reportedly sought to raise an additional $10 billion in new funding after a $13 billion investment round in September 2025.[29]

81. All the while, Anthropic has not seen fit to make rightsholders like BMG whole for using their works to build its extraordinarily valuable company. But make no mistake, that value is derived in part from using BMG's copyrighted works for Anthropic's Claude models and general purpose central library of pirated works.

82. Anthropic's revenue generation has similarly skyrocketed. In February 2026, Anthropic reported its run-rate revenue was ***$14 billion***—a figure that has grown more than 10x annually in each of the past three years. If the rate continues

[26] Mary Ann Azevedo, *Report: Anthropic Raising $5B At A $170B Valuation As AI Funding Heats Up*, Crunchbase News (July 30, 2025), https://news.crunchbase.com/ai/unicorn-anthropic-fund-valuation-raise-iconiq/.

[27] *See id*.

[28] "Anthropic raises $30 billion in Series G funding at $380 billion post-money valuation," *Anthropic* (Feb. 12, 2026), https://www.anthropic.com/news/anthropic-raises-30-billion-series-g-funding-380-billion-post-money-valuation.

[29] *See* Kate Clark, *Anthropic Raising $10 Billion at $350 Billion Value*, The Wall Street Journal (Jan. 7, 2026), https://www.wsj.com/tech/ai/anthropic-raising-10-billion-at-350-billion-value-62af49f4?st=pw1W2t&reflink=desktopwebshare_permalink.

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

COMPLAINT AND DEMAND FOR JURY TRIAL

for 2026, Anthropic's run-rate revenue could top $100 billion by January 2027.[30] Anthropic also shared that the number of its customers spending over $100,000 annually on Claude has grown sevenfold in just the last year.[31]

83. Anthropic built its valuable and sought-after Claude models in part on a text corpus that reproduces, prepares derivative works using, and includes BMG's copyrighted lyrics, without BMG's authorization. Anthropic has financially benefited from these unauthorized exploitations of BMG's works and, because Anthropic tracks Claude user prompts, Anthropic is well aware that such works are a focus of its users.

84. Anthropic monetizes and derives substantial value from Claude models that continue to infringe BMG's copyrighted works. Anthropic limits the use of its free versions of Claude, and encourages users to sign up for "Claude Pro" with a subscription cost of $20 per month, or the "Max plan," which offers "5 times more usage per session than the Pro plan" for $100 per month or "20 times more usage" for $200 per month.[32] While even non-paying users have value to Anthropic because they help support market share and enterprise value, Anthropic also receives subscription revenue from individual users, some of whom obtain from Claude unauthorized copies of and/or derivative works based on BMG's works.

85. Anthropic also generates significant revenue from commercial

---

[30] "Anthropic raises $30 billion in Series G funding at $380 billion post-money valuation," *Anthropic* (Feb. 12, 2026), https://www.anthropic.com/news/anthropic-raises-30-billion-series-g-funding-380-billion-post-money-valuation.

[31] *Id.*

[32] *See How do usage and length limits work?*, Anthropic (last accessed Mar. 16, 2026), https://support.claude.com/en/articles/11647753-how-do-usage-and-length-limits-work; *What is the Pro plan?*, Anthropic (last accessed Mar. 16, 2026), https://support.claude.com/en/articles/8325606-what-is-the-pro-plan#h_62ccc00135; *What is the Max plan?*, Anthropic (last accessed Mar. 16, 2026), https://support.claude.com/en/articles/11049741-what-is-the-max-plan#h_cfd2904008.

- 28 -

customers by exploiting BMG's copyrighted lyrics, including through the development of Claude models using a training corpus, and through outputs, containing such lyrics. Upon information and belief, Anthropic currently sells several different subscription models to businesses for hundreds or thousands of dollars a month. Anthropic also offers its commercial customers access to Claude as an API, and charges those businesses for using the Claude API on a per-token, pay-as-you-go basis. Through this model, upon information and belief, Anthropic receives payment each time one of its commercial users prompts Claude API for BMG's works and each time Claude API generates output replicating and relying on those works.

86. Upon information and belief, Anthropic continues to generate even greater revenue and greater potential revenue through its collection and analysis of Claude user data, which it exploits to develop and improve its Claude models. With each newly released version of Claude, Anthropic gains additional data that it can use to refine its models further, and attracts more publicity for itself and Claude, thereby enabling the company to further monetize its products.

**D.     Anthropic's Serious and Ongoing Harms to BMG**

87. Anthropic's unlawful infringing conduct has caused and continues to cause substantial and irreparable harm to BMG and the songwriters it represents.

88. The copyrighted works that BMG owns and/or controls are precisely the type of artistic, expressive works that the Copyright Act was designed to protect. On the other hand, Anthropic is a massive for-profit company that has engaged in a pattern of unauthorized access, copying and distribution of such works through various unlawful means. Anthropic's widescale commercial copying of copyrighted works for profit devalues the creative efforts of BMG's songwriters and BMG's commercial undertakings on their behalf, depriving them of artistic and commercial control over these works, as well as significant compensation to which

- 29 -

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

COMPLAINT AND DEMAND FOR JURY TRIAL

they are entitled.

89.    Anthropic has chosen not to seek permission to use BMG's copyrighted works at any point, including in its development process. Anthropic made this choice despite its knowledge that it has engaged and continues to engage in, and has facilitated and continues to facilitate, the infringement of these works on a massive scale. Anthropic has decided improperly to profit off these works at the expense of the creative individuals and industry that invested untold efforts and resources to create and develop the works.

90.    Anthropic's infringing conduct harms the music publishing industry's foundation by undercutting the licensing system that BMG, songwriters and so many others in the field rely on for compensation. Upon information and belief, Anthropic's past and ongoing infringements of BMG's musical compositions harm the market in multiple ways, including (i) by creating competing market substitutes for BMG's works and (ii) diluting the market for BMG's copyrighted works. These actions harm BMG and the songwriters it represents by preventing them from adequately and fully exploiting the works they have a legal and exclusive right to monetize.

91.    Anthropic has also harmed BMG by depriving it of the value of the significant license fees to which BMG is entitled for Anthropic's use of BMG's copyrighted works, including as part of Anthropic's general purpose central library.

92.    Anthropic could cease its infringing conduct at any time. Yet, despite repeated lawsuits from creators and owners of a variety of copyrighted works and a specific written request from BMG to stop the wrongdoing at issue in this lawsuit, Anthropic has refused to do so, making a mockery of its stated founding principles

- 30 -

COMPLAINT AND DEMAND FOR JURY TRIAL

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

of building a better and "broadly ethical"[33] AI model.[34]

93.    BMG brings this action to halt Anthropic's infringing behavior and remedy the significant damage it has caused.

## FIRST CLAIM FOR RELIEF
### (Copyright Infringement in Training and Output)

94.    BMG refers to and realleges each and every allegation in paragraphs 1 through 93 above as if fully set forth herein.

95.    BMG, in whole or in part, owns or, as an exclusive licensee, controls the U.S. copyright in musical compositions registered with the U.S. Copyright Office, including, without limitation, the musical compositions listed in Exhibit A attached hereto.

96.    As set forth above, Anthropic infringed BMG's copyrights by, among other things, unlawfully reproducing, distributing to the public, and/or publicly displaying BMG's works, and/or preparing derivative works based on BMG's copyrighted works, all without BMG's permission or consent. Specifically, Anthropic illegally reproduced, distributed to the public, publicly displayed, and/or prepared derivative works based on BMG's copyrighted works through its use of BMG's copyrighted works to develop and train its Claude models, through outputs its Claude models produce, and by reproducing and using them in a preserved general-purpose central library intended to be maintained indefinitely. These actions, which continue today, constitute direct infringement by Anthropic of BMG's registered copyrights and exclusive rights related thereto in violation of the Copyright Act, 17 U.S.C. §§ 106(1)-(3), (5) and 501.

---

[33] *Claude's Constitution*, Anthropic (last accessed Mar. 16, 2026), https://www.anthropic.com/constitution#being-broadly-ethical.

[34] On December 24, 2025, counsel for BMG sent a cease and desist letter to Anthropic concerning its infringing conduct. Anthropic did not respond.

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

97.    A non-exhaustive and exemplary list of the musical compositions for which BMG, in whole or in part, owns or, as an exclusive licensee, controls the U.S. copyright and that Anthropic has infringed through training (including pre-training activities) and outputs is attached hereto as Exhibit A.

98.    Each of the foregoing activities violates BMG's rights in its musical compositions under the U.S. Copyright Act, 17 U.S.C. §§ 101 *et seq.*, entitling BMG to recover from Anthropic the damages it has suffered and will suffer, and all profits, gains, and benefits, both direct and indirect, that Anthropic has obtained as a result of its wrongdoing.

99.    Each of Anthropic's acts of infringement of BMG's copyrighted musical compositions constitute separate and distinct acts of infringement.

100.    Each of Anthropic's acts of infringement was, and continues to be, willful, intentional, and purposeful, in disregard of and with indifference to BMG's rights.

101.    BMG has been and will continue to be substantially and irreparably injured in an amount not readily capable of determination as a direct and proximate result of Anthropic's conduct, and for which BMG has no adequate remedy at law. Unless restrained by this Court, Anthropic will continue to infringe BMG's rights and cause further irreparable injury to BMG. BMG is therefore entitled to permanent injunctive relief prohibiting Anthropic's ongoing infringement.

102.    BMG has suffered damages as a direct and proximate result of Anthropic's infringement of BMG's copyrights. BMG, therefore, is entitled to statutory damages, pursuant to 17 U.S.C. § 504(c), or, alternatively at its election, actual damages and Anthropic's profits from the infringements, pursuant to 17 U.S.C. § 504(b), to be proven at trial.

103.    BMG is further entitled to seek its attorneys' fees and costs pursuant to 17 U.S.C. § 505.

- 32 -

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

## SECOND CLAIM FOR RELIEF
### (Direct Copyright Infringement by Torrenting)

104.   BMG refers to and realleges each and every allegation in paragraphs 1 through 93 above as if fully set forth herein.

105.   BMG, in whole or in part, owns or, as an exclusive licensee, controls the U.S. copyright in musical compositions registered with the U.S. Copyright Office, including, without limitation, the musical compositions listed in Exhibit B attached hereto.

106.   As set forth above, Anthropic infringed BMG's copyrights by, among other things, unlawfully reproducing and distributing musical compositions owned by BMG, including the sheet music and song lyrics contained therein, without BMG's permission or consent. Specifically, Anthropic illegally reproduced and also distributed to the public through torrenting BMG's copyrighted works. Anthropic also used BMG's copyrighted works obtained through torrenting to develop and train its Claude models, through outputs its Claude models produce, and for reproduction and use in a general-purpose central library intended to be maintained indefinitely. Such activity constitutes direct infringement by Anthropic of BMG's registered copyrights and exclusive rights related thereto in violation of the Copyright Act, 17 U.S.C. §§ 106(1)-(3), (5) and 501.

107.   A non-exhaustive and exemplary list of the musical compositions for which BMG, in whole or in part, owns or, as an exclusive licensee, controls the U.S. copyright and that Anthropic has infringed through torrenting is attached hereto as Exhibit B.

108.   Each of the foregoing activities violates BMG's rights in its musical compositions under the U.S. Copyright Act, 17 U.S.C. §§ 101 *et seq.*, entitling BMG to recover from Anthropic the damages it has suffered and will suffer, and all profits, gains, and benefits, both direct and indirect, that Anthropic has obtained as

- 33 -

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

a result of its wrongdoing.

109.   Each of Anthropic's acts of infringement of BMG's copyrighted musical compositions constitute separate and distinct acts of infringement.

110.   Each of Anthropic's acts of infringement is willful, intentional, and purposeful, in disregard of and with indifference to BMG's rights.

111.   BMG has suffered damages as a direct and proximate result of Anthropic's infringement of BMG's copyrights. BMG, therefore, is entitled to statutory damages, pursuant to 17 U.S.C. § 504(c), or, alternatively at its election, actual damages and Anthropic's profits from the infringements, pursuant to 17 U.S.C. § 504(b), to be proven at trial.

112.   BMG is further entitled to seek its attorneys' fees and costs pursuant to 17 U.S.C. § 505.

### THIRD CLAIM FOR RELIEF
**(Contributory Infringement)**

113.   BMG refers to and realleges each and every allegation in paragraphs 1 through 93 above as if fully set forth herein.

114.   BMG, in whole or in part, owns or, as an exclusive licensee, controls the U.S. copyright in musical compositions registered with the U.S. Copyright Office, including, without limitation, the musical compositions listed in Exhibit A attached hereto.

115.   As set forth above, the licensees and users of Anthropic's Claude models unlawfully reproduced, distributed to the public, publicly displayed, and/or prepared derivative works based on BMG's copyrighted works, including those listed in Exhibit A hereto, all without BMG's permission or consent. Such activity, which continues to this day, constitutes direct infringement or an unauthorized act in violation of the Copyright Act, 17 U.S.C. §§ 106(1)-(3), (5) and 501.

116.   Anthropic is contributorily liable for those direct infringements by

- 34 -

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

COMPLAINT AND DEMAND FOR JURY TRIAL

licensees and users of its Claude models.

117. A non-exhaustive and exemplary list of the musical compositions for which BMG, in whole or in part, owns or, as an exclusive licensee, controls the U.S. copyright and for which Anthropic is contributorily liable is attached hereto as Exhibit A.

118. As set forth above, Anthropic is aware of the infringing activities of its licensees and users. Anthropic knowingly used large amounts of infringing content, including BMG's copyrighted works, to train its Claude models, knowing that this would enable those models to respond to user prompts by generating responses that infringe BMG's copyrighted works. Anthropic knowingly utilizes BMG's copyrighted works, among numerous others' copyrighted works, as both input and output for its Claude models, and Anthropic has knowledge of specific infringing responses generated by its Claude models in response to user prompts, among other knowledge.

119. Anthropic facilitates, encourages, and materially contributes to the infringements by its users and licensees, including, without limitation, by marketing its Claude models, providing access to these models through its website and its API, and hosting and transmitting known infringing content through those models.

120. Anthropic has the ability to implement simple measures to avoid materially contributing to this specific infringing activity, but has elected not to do so. Rather, Anthropic knowingly and intentionally collects training data, which includes copyrighted materials such as BMG's copyrighted works, provides the website and infrastructure required for users of its Claude models to directly infringe BMG's copyrights, and actively facilitates and encourages this continuing infringement. As a direct and proximate result of Anthropic's actions, licensees and users of Anthropic's Claude models have infringed BMG's copyrights.

121. Anthropic is contributorily liable for the infringement of BMG's

- 35 -

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

copyrighted musical compositions, including the lyrics they embody, in violation of BMG's exclusive rights under the Copyright Act, 17 U.S.C. §§ 106(1)-(3), (5) and 501.

122. Anthropic designs, operates, maintains, and markets its Claude models intending to promote the models' use of BMG's and countless others' copyrighted works, or with knowledge that its models would use and output copies of and/or derivative works based on such works. As a direct and proximate result of Anthropic's actions, licensees and users of Anthropic's Claude models have infringed BMG's copyrighted works. Anthropic is therefore liable for inducing the infringing acts of the licensees and users of its Claude models, in violation of BMG's exclusive rights in such works under the Copyright Act, 17 U.S.C. §§ 106(1)-(3), (5) and 501.

123. Anthropic's acts of infringement were, and continue to be, willful, intentional, and purposeful in disregard of and with indifference to BMG's rights.

124. BMG has been and will continue to be substantially and irreparably injured in an amount not readily capable of determination as a direct and proximate result of Anthropic's conduct, and for which BMG has no adequate remedy at law. Unless restrained by this Court, Anthropic will continue to cause further irreparable injury to BMG. BMG is therefore entitled to permanent injunctive relief prohibiting ongoing infringement of BMG's copyrights.

125. BMG has suffered damages as a direct and proximate result of Anthropic's infringement of BMG's copyrights. BMG, therefore, is entitled to statutory damages, pursuant to 17 U.S.C. § 504(c), or, alternatively at its election, actual damages and Anthropic's profits from the infringements, pursuant to 17 U.S.C. § 504(b), to be proven at trial.

126. BMG is further entitled to seek its attorneys' fees and costs pursuant to 17 U.S.C. § 505.

- 36 -

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

## FOURTH CLAIM FOR RELIEF
### (Vicarious Infringement)

127. BMG refers to and realleges each and every allegation in paragraphs 1 through 93 above as if fully set forth herein.

128. BMG, in whole or in part, owns or, as an exclusive licensee, controls the U.S. copyright in musical compositions registered with the U.S. Copyright Office, including, without limitation, the musical compositions listed in Exhibit A hereto.

129. As set forth above, the licensees and users of Anthropic's Claude models unlawfully reproduced, distributed to the public, publicly displayed, and/or prepared derivative works based on BMG's copyrighted works, including those listed in Exhibit A hereto, all without BMG's permission or consent. Such activity, which continues to this day, constitutes direct infringement or an unauthorized act in violation of the Copyright Act, 17 U.S.C. §§ 106(1)-(3), (5) and 501.

130. Anthropic is vicariously liable for those direct infringements by licensees and users of its Claude models.

131. A non-exhaustive and exemplary list of the musical compositions for which BMG, in whole or in part, owns or, as an exclusive licensee, controls the U.S. copyright and for which Anthropic is vicariously liable is attached hereto as Exhibit A.

132. As set forth above, Anthropic has the capability and legal right to oversee and control the infringing activities that occur through and as a result of its Claude models. Anthropic can control both the input and output of its Claude models through its ongoing training and development of the models. Anthropic can monitor and review its Claude models for harmful, infringing, or otherwise unlawful input and output, and has the ability to finetune and further develop those models to alter or eliminate such harmful, infringing, or otherwise unlawful input

- 37 -

COMPLAINT AND DEMAND FOR JURY TRIAL

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

and output. Anthropic can also control and limit users' ability to access its Claude models, including by terminating such access entirely under its terms of service. Anthropic can further monitor and review user interactions with its Claude models, among other rights and capabilities to monitor and control the infringing activities of Claude users.

133. At all times relevant here, Anthropic has derived a direct financial benefit from its licensees and users' infringement of BMG's copyrighted works through Anthropic's Claude models. Anthropic financially benefits from its Claude models in various ways, including by selling access to Anthropic's models to individuals and businesses and selling API access to businesses on a per-word pricing basis. Through the latter subscription model, Anthropic generates revenues each time a user requests BMG's copyrighted lyrics through the API, and then again each time the API generates output reproducing and/or relying on BMG's copyrighted lyrics. In addition to other financial benefits, Anthropic has received billions of dollars in funding for the development of its Claude models, and has saved vast sums by avoiding payment of licensing fees for the approved use of BMG's copyrighted works.

134. Anthropic also benefits from its improper use of BMG's copyrighted works because Anthropic incorporated them into the text corpus that attracts customers to Anthropic's Claude models. In other words, these Claude models have value and are in demand precisely because of the text corpus used to train them, which includes BMG's copyrighted works. Claude's capacity to generate copies of song lyrics, including BMG's copyrighted works, and its ability to generate other output derived from the models' ingestion of BMG's copyrighted works is one thing, among others, that also attracts customers and users to Anthropic.

135. Anthropic has refused to take reasonable steps to prevent widespread infringement by users of its Claude models. As a direct and proximate result of

- 38 -

such refusal by Anthropic, users of its Claude models have infringed BMG's copyrights.

136.   Anthropic is vicariously liable for the infringement of BMG's copyrighted musical compositions, including the lyrics they embody, in violation of BMG's exclusive rights under the Copyright Act, 17 U.S.C. §§ 106(1)-(3), (5) and 501.

137.   Anthropic's acts of infringement were, and continue to be, willful, intentional, and purposeful, in disregard of and with indifference to BMG's rights.

138.   BMG has been and will continue to be substantially and irreparably injured in an amount not readily capable of determination as a direct and proximate result of Anthropic's conduct, and for which BMG has no adequate remedy at law. Unless restrained by this Court, Anthropic will continue to cause further irreparable injury to BMG. BMG is therefore entitled to permanent injunctive relief prohibiting ongoing infringement of BMG's copyrights.

139.   BMG has suffered damages as a direct and proximate result of Anthropic's infringement of BMG's copyrights. BMG, therefore, is entitled to statutory damages, pursuant to 17 U.S.C. § 504(c), or, alternatively at its election, actual damages and Anthropic's profits from the infringements, pursuant to 17 U.S.C. § 504(b), to be proven at trial.

140.   BMG is further entitled to seek its attorneys' fees and costs pursuant to 17 U.S.C. § 505.

### FIFTH CLAIM FOR RELIEF
**(Removal or Alteration of Copyright Management Information)**

141.   BMG refers to and realleges each and every allegation in paragraphs 1 through 93 above as if fully set forth herein.

142.   The titles of BMG's musical compositions, the names of and additional identifying information for the authors and copyright owners of these

- 39 -

musical compositions, including the song lyrics they embody, constitute CMI pursuant to the Copyright Act, 17 U.S.C. § 1202.

143. As set forth above, Anthropic (i) intentionally removed or altered CMI from BMG's copyrighted works without BMG's authorization or consent in violation of Copyright Act, 17 U.S.C. § 1202(b)(1); and/or (ii) distributed BMG's copyrighted works or copies of BMG's works with the knowledge that CMI had been removed or altered without BMG's authorization or consent in violation of Copyright Act, 17 U.S.C. § 1202(b)(3); and (iii) did so knowing or having reasonable grounds to know that such actions will induce, enable, facilitate, or conceal an infringement of BMG's copyrighted work.

144. A non-exhaustive and exemplary list of the musical compositions for which BMG, in whole or in part, owns or, as an exclusive licensee, controls the U.S. copyright and for which Anthropic is liable for removal and/or alteration of CMI is attached hereto as Exhibit A.

145. Specifically, Anthropic intentionally removed and/or altered CMI from BMG's works in the course of pre-training and training Anthropic's Claude models, including by copying BMG's copyrighted lyrics from websites, such as those of BMG's licensees, and then applying algorithms that remove copyright notices and other CMI from the copied text. In addition, Anthropic intentionally obtains and uses training datasets from third parties that Anthropic knows had CMI removed. Anthropic uses such content, including BMG's copyrighted lyrics, to train its models so that the models can reproduce expressive content such as BMG's copyrighted lyrics. But Anthropic excludes CMI, which it does not want to use to train its Claude models.

146. Anthropic also intentionally removed and/or altered CMI in its Claude models' outputs, including by generating outputs that copy BMG's lyrics while omitting the CMI that Anthropic had no authority to remove, in violation of the

- 40 -

Copyright Act. Anthropic further intentionally removed and/or altered CMI, including from BMG's works, when it torrented copyrighted works, including BMG's works, from shadow libraries.

147. Anthropic also distributed BMG's copyrighted works and/or copies of those works knowing that CMI for such works had been removed or altered. This includes Anthropic training its Claude models by, among other things, knowingly using training datasets containing BMG's copyrighted works after applying algorithms to remove CMI; using training sets with such works for which Anthropic knew CMI had already been removed; and torrenting such works from pirate libraries, including works it knew lacked CMI. In addition, Anthropic trained its Claude models knowing it would retain and output copies of copyrighted lyrics without CMI.

148. Anthropic knew or had reasonable grounds to know that these acts would induce, enable, facilitate, or conceal an infringement of BGM's copyrighted works, including by concealing Anthropic's own infringement of BMG's works in both the training inputs and outputs of its Claude models; concealing additional infringements related to the use of BMG's copyrighted works in training datasets obtained from third-parties; and inducing, enabling, facilitating, and concealing infringements by users of Anthropic's Claude models, who Anthropic does not inform that the output they receive from the models contains copyrighted materials stripped of CMI, and who Anthropic understood could be named in copyright suits based on its indemnification policy.

149. Anthropic's acts of infringement were, and continue to be, willful, intentional, and purposeful, in disregard of and with indifference to BMG's rights.

150. BMG has been and will continue to be substantially and irreparably injured in an amount not readily capable of determination as a direct and proximate result of Anthropic's conduct, and for which BMG has no adequate remedy at law.

- 41 -

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

COMPLAINT AND DEMAND FOR JURY TRIAL

Unless restrained by this Court, Anthropic will continue to infringe BMG's rights and cause further irreparable injury to BMG. BMG is therefore entitled to permanent injunctive relief prohibiting Anthropic's ongoing infringement.

151.   BMG has suffered damages as a direct and proximate result of Anthropic's infringement of BMG's copyrights. BMG, therefore, is entitled to statutory damages, pursuant to 17 U.S.C. § 1203(c)(3)(B), or, alternatively at its election, actual damages and Anthropic's profits from the infringements, pursuant to 17 U.S.C. § 1203(c)(2), to be proven at trial.

152.   BMG is further entitled to seek its attorneys' fees and costs pursuant to 17 U.S.C. § 1203(b)(4)-(5).

## **PRAYER**

**WHEREFORE**, Plaintiff BMG prays for judgment as follows:

a.   On its First, Second, Third and Fourth Claims for Relief, an order that Anthropic be required to pay BMG, at BMG's election, either (a) statutory damages in an amount up to the maximum provided by law, arising from Anthropic's willful violations of BMG's rights under the Copyright Act, including in an amount up to $150,000 per work infringed as part of each distinct infringing activity, pursuant to 17 U.S.C. § 504(c); or (b) the damages BMG has actually suffered as a result of Anthropic's direct, contributory and vicarious infringements, and Anthropic's profits from the infringement, in an amount to be proven at trial, pursuant to 17 U.S.C. § 504(b);

b.   On its Fifth Claim for Relief, an order that Anthropic be required to pay BMG, at BMG's election, either (a) statutory damages in an amount up to the maximum provided by law, arising from Anthropic's removal and/or alteration of BMG's CMI in violation of the Copyright Act, including in an amount up to $25,000 per violation, pursuant to 17 U.S.C. § 1203(c)(3)(B); or (b) BMG's actual damages and Anthropic's profits, in an amount to be proven at trial, pursuant to 17

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

COMPLAINT AND DEMAND FOR JURY TRIAL

U.S.C. § 1203(c)(2);

c.    An order for such equitable relief under Title 17, Title 28, and/or the Court's inherent authority as is necessary to prevent or restrain infringement of BMG's copyrights and removal or alteration of BMG's CMI, including a permanent injunction requiring that Anthropic and its officers, agents, servants, employees, attorneys, directors, successors, assigns, licensees, and all others in active concert or participation with any of them, cease directly infringing, indirectly infringing, and/or removing or altering CMI, or causing, aiding, enabling, facilitating, encouraging, promoting, inducing, or materially contributing to or participating in the infringement of any of BMG's exclusive rights under copyright, including without limitation in the musical compositions in Exhibits A and B;

d.    For an order requiring Anthropic to provide an accounting of the training data, training methods, and known capabilities of its Claude models, including requiring that Anthropic identify BMG's lyrics and other copyrighted works on which it has trained its Claude models, and disclose the methods by which Anthropic has collected, copied, processed, and encoded this training data (including any third parties it has engaged to collect or license such data);

e.    For an order requiring that Anthropic destroy under the Court's supervision all infringing copies of BMG's copyrighted works in Anthropic's possession or control—including without limitation copies maintained in any internal libraries, repositories, or storage systems regardless of whether Anthropic used or intended to use such copies to train its Claude models—and then file a sworn report setting forth in detail the manner in which it has complied with the aforesaid order, pursuant to 17 U.S.C. § 503(b);

f.    For pre-judgment and post-judgment interest on all sums awarded;

g.    For BMG's reasonable attorneys' fees and costs in this action, pursuant to 17 U.S.C. § 505 and/or 17 U.S.C. § 1203(b)(4)-(5); and

- 43 -

h.     For such other and further relief as the Court deems just and proper.

Dated:  March 17, 2026          MANATT, PHELPS & PHILLIPS, LLP


By: */s/ Robert A. Jacobs*
     Robert A. Jacobs
     Nathaniel L. Bach
     Prana A. Topper
     Evan D. Cooper

*Attorneys for Plaintiff*
BMG Rights Management (US) LLC

**[REST OF PAGE INTENTONALLY LEFT BLANK]**

- 44 -

COMPLAINT AND DEMAND FOR JURY TRIAL

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

# DEMAND FOR JURY TRIAL

Plaintiff BMG Rights Management (US) LLC, d/b/a BMG Apollo, d/b/a BMG Bespoke Songs, d/b/a BMG Bespoke US, d/b/a BMG Bespoke Works, d/b/a BMG Blue, d/b/a BMG Bumblebee, d/b/a BMG Cicada, d/b/a BMG Diamond Songs, d/b/a BMG Firefly, d/b/a BMG Gemini, d/b/a BMG Gold Songs, d/b/a BMG Mercury, d/b/a BMG Monarch, d/b/a BMG Onyx Songs, d/b/a BMG Platinum Songs US, d/b/a BMG Production Music US, d/b/a BMG Production Songs, d/b/a BMG Production Works, d/b/a BMG Ruby Songs, d/b/a BMG Sapphire Songs, d/b/a BMG Silver Songs, d/b/a BMG Sterling, d/b/a BMG Tambora, d/b/a BMG Titanium Songs, d/b/a Music Of Windswept, d/b/a Songs Of Windswept Pacific, and d/b/a Windswept Pacific, respectfully demands a trial by jury.

Dated:  March 17, 2026          MANATT, PHELPS & PHILLIPS, LLP


By: */s/ Robert A. Jacobs*
Robert A. Jacobs
Nathaniel L. Bach
Prana A. Topper
Evan D. Cooper

*Attorneys for Plaintiff*
BMG Rights Management (US) LLC

- 45 -

COMPLAINT AND DEMAND FOR JURY TRIAL

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES