[Counsel on signature page]

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| CONCORD MUSIC GROUP, INC., ET AL.,<br><br>Plaintiffs,<br><br>v.<br><br>ANTHROPIC PBC, DARIO AMODEI, and BENJAMIN MANN,<br><br>Defendants. | Case Number: 5:26-cv-00880-EKL-SVK<br><br>Judge Eumi K. Lee<br>Magistrate Judge Susan van Keulen |
| BMG RIGHTS MANAGEMENT (US) LLC,<br><br>Plaintiff,<br><br>v.<br><br>ANTHROPIC PBC,<br><br>Defendants. | Case Number: 5:26-cv-02334-EKL-SVK<br><br>Judge Eumi K. Lee<br>Magistrate Judge Susan van Keulen |

# JOINT CASE MANAGEMENT STATEMENT

Pursuant to Fed. R. Civ. P. 16, Civil L.R. 16-9, the Standing Order for All Judges of the Northern District of California, this Court's Standing Order for Civil Cases, and the Court's September 2, 2026 order (ECF No. 117) (the "September 2 Order"), counsel for the Parties in *Concord Music Group, Inc., et al. v. Anthropic PBC, et al.*, Case No. 5:26-cv-00880-EKL-SVK ("*Concord II*") and *BMG Rights Management (US) LLC v. Anthropic PBC*, Case No. 5:26-cv-02334-EKL-SVK ("*BMG*") hereby submit this Joint Case Management Statement. To prepare this Joint Case Management Statement, counsel for all parties in *Concord II* and *BMG* (the "Parties") conferred by videoconference on September 22, 2026, and additionally by email.

The September 2 Order instructed the Parties to engage in phased discovery in the *Concord II* and *BMG* cases, in which "[d]uring phase one, the parties shall prioritize discovery relating to the claims related to alleged torrenting . . . and the works-in-suit implicated by those torrenting claims." Upon the Court's resolution of the cross-motions for summary judgment in *Concord Music Group, Inc., et al. v. Anthropic PBC*, Case No. 5:24-cv-03811-EKL-SVK ("*Concord I*"), the Parties shall confer about how best to proceed on the claims not included in Phase I of discovery and shall submit a revised Joint Case Management Statement at that time.

The Court has ordered two additional cases related to *Concord II* and *BMG*: *Sony Music Publishing (US) LLC, Warner Chappell Music, Inc.*, *et al. v. Anthropic PBC et al.*, Case No. 3:26-cv-09217-EKL ("*SMP-WCM*") (ECF No. 16) and *Round Hill Music LP, et al. v. Anthropic PBC*, 5:26-cv-08505-EKL ("*Round Hill*") (ECF No. 27). The Parties' positions with respect to the inclusion of those related cases in phased discovery is outlined in Section 9.

## 1. JURISDICTION AND SERVICE

The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this dispute involves claims brought by the *Concord II* and *BMG* Plaintiffs against Defendants Anthropic PBC ("Anthropic"), and claims brought by the *Concord II* Plaintiffs against Dario Amodei and Benjamin Mann (together with Anthropic, "Defendants"), under the Copyright Act, 17 U.S.C. § 101 *et seq*. No outstanding issues as to personal jurisdiction or venue remain. No Parties remain to be served at this time.

## 2. FACTS

**Plaintiffs' Statement.**

Plaintiffs are among the world's leading music publishers. Anthropic is an AI company that is valued at $2 trillion or more. Plaintiffs allege that Defendants systematically infringed their copyrighted musical compositions (including, without limitation, the specific musical compositions listed in the exhibits to their complaints) in numerous ways—including, among other methods, by illegally torrenting books containing their works from known pirate websites such as Library Genesis and Pirate Library Mirror, by destructively scanning and digitizing print books containing their works without permission, by scraping their lyrics from the internet and copying other datasets and sources including their works without authorization, and by copying and exploiting these works both as input to train Anthropic's AI models and in the output those models generate, as well as removing and altering Plaintiffs' critical copyright management information in the process.

A number of the music publishers that are plaintiffs in *Concord II* previously filed suit against Anthropic in *Concord I* for claims of copyright infringement, alleging that Anthropic copied the lyrics to 499 musical works in suit via scraping and downloading third-party datasets and used those works as input to train its earlier Claude models. *See Concord I*, Second Am. Compl., ECF No. 728. As a result of this copying, Anthropic's Claude models generated infringing output containing verbatim or nearly-verbatim copies of the lyrics to those 499 works, unauthorized derivatives of those lyrics, and purportedly "new" lyrics that compete with the *Concord I* Plaintiffs' works. The *Concord I* Plaintiffs also allege that, both during the training process and via Claude's output, Anthropic illegally stripped copyright management information from the 499 works in suit. The *Concord I* record indisputably demonstrates that Anthropic committed mass infringement of the *Concord I* Plaintiffs' works during the AI training process and in Claude' outputs, and that such use is ***not*** fair: Anthropic trained Claude on the 499 works in suit so that Claude would respond to requests for lyrics by outputting unauthorized copies of those works as well as "new" AI-generated lyrics, thereby harming the traditional lyrics licensing market, the nascent AI training data licensing market, and the market for human-authored lyrics. As this

Court has recognized, the resolution of the *Concord I* summary judgment motions may affect the scope of discovery in the instant cases.

The *Concord I* Plaintiffs sought to amend their Complaint to include claims of direct infringement via torrenting after Judge Alsup found that Anthropic had torrented at least seven million books from pirate libraries Library Genesis and Pirate Library Mirror, in part to create a "research library" that would "inform . . . [Anthropic's] products." *Bartz et al. v. Anthropic PBC*, Case No. 3:24-cv-05417-WHA (N.D. Cal.) ("*Bartz*"), ECF No. 231 at 2-5, 9. This Court denied the *Concord I* Plaintiffs' motion to amend. *Concord I*, ECF No. 468.

Accordingly, the *Concord II* Plaintiffs filed their suit against Anthropic, Dr. Amodei, and Mr. Mann on January 28, 2026 to hold Anthropic accountable for its astonishing mass theft of the *Concord II* Plaintiffs' works. *Concord II*, ECF No. 1; *see also Concord II*, ECF No. 93. As noted *supra*, Judge Alsup already determined that Anthropic torrented millions of books from well-known pirate libraries and denied Anthropic's summary judgment motion on fair use as to that torrenting. *See Bartz*, ECF. No. 231 at 9. The record in the instant cases will confirm that holding.

The *Concord II* Plaintiffs assert that (1) Anthropic, Dr. Amodei, and Mr. Mann directly infringed their copyrighted works via torrenting (Count I); (2) Dr. Amodei and Mr. Mann contributorily infringed their copyrighted works via torrenting (Count III); (3) Anthropic directly infringes their works by scraping their lyrics from the internet, destructively scanning and digitizing print books containing their works, and copying their lyrics from other datasets and sources, all without authorization, and by copying and exploiting these works as input to train Anthropic's AI models and in the output those models generate (Count II); and (4) Anthropic removes or alters copyright management information from their works in violation of 17 U.S.C. § 1202 (Count IV). *See Concord II*, Second Am. Compl., ECF No. 93. Anthropic and Dario Amodei have moved to dismiss portions of the Second Amended Complaint. These motions misapprehend both the law and the *Concord II* Plaintiffs' allegations. The *Concord II* Plaintiffs have adequately alleged infringing output and removal of copyright management information, and there is no legal requirement that Plaintiffs identify specific infringing examples to survive a motion to dismiss for either direct infringement or a claim under 17 U.S.C. § 1202(b).

Plaintiff BMG filed its suit against Anthropic on March 17, 2026. *BMG*, Compl., ECF No. 1; *BMG*, Am. Compl., ECF No. 44. BMG asserts that (1) Anthropic infringes its works by scraping its lyrics from the internet, destructively scanning and digitizing print books containing its works, and copying its lyrics from other datasets and sources, all without authorization, and by copying and exploiting these works as input to train Anthropic's AI models and in the output those models generate (Count I); (2) Anthropic infringed its copyrighted works via torrenting, including as a part of a broader project to assemble an all-purpose digital library of written works, a project that also included, among other activities, Anthropic's acquisition and destructive scanning of millions of print books (Count II); and (3) Anthropic removes or alters copyright management information from its works in violation of 17 U.S.C. § 1202 (Count III). *BMG*, Am. Compl., ECF No. 44.

Plaintiffs seek judgment in their favor on each of these claims, permanent injunctive relief, statutory and/or actual damages, and additional relief as detailed in the operative complaints. *See Concord II*, Second Am. Compl. at 45–46, ECF No. 93; *BMG*, Am. Compl. at 46–47, ECF No. 44.

**<u>Defendants' Statement.</u>**

Anthropic is an AI safety and research company committed to developing AI responsibly and for the long-term benefit of humanity. Its family of general purpose large language models (LLMs), known as "Claude," helps people do things like write and debug software, analyze complex documents, reason through hard problems and collaborate across nearly every field of knowledge. Claude's abilities emerge from its training, where it learns the structure of language and reasoning. Anthropic has also pioneered "Constitutional AI," a method that gives Claude transparent ethical principles and behavioral guidelines to follow. Consistent with those principles, Anthropic has implemented safeguards to prevent misuse of Claude, including measures directing Claude to avoid reproduction of copyrighted materials.

These cases were filed as follow-on lawsuits to *Concord Music Group, Inc., et al. v. Anthropic PBC*, Case No. 24-cv-03811-EKL-SVK (N.D. Cal.) ("*Concord I*"). In *Concord I*, Plaintiffs in the same corporate families as the *Concord II* Plaintiffs sued Anthropic for copyright infringement and CMI removal. After nearly two years of litigation, Anthropic has moved for

summary judgment in that case because the extensive, undisputed record demonstrates that Anthropic's use of lyrics to train Claude is fair use and because the Publishers' DMCA claims fail as a matter of law. The record and law leave no room for disagreement: training Claude with lyrics is an indisputably transformative use and Publishers have not demonstrated any cognizable market harm. The determination of those threshold legal questions will inform the overlapping claims here. As in *Concord I*, the record here will clearly demonstrate that any use of Publishers' lyrics to train Anthropic's LLM is a transformative fair use.

Anthropic has also moved to dismiss the direct infringement claims relating to outputs and the DMCA claim in *Concord II* because Plaintiffs fail to plausibly allege any outputs at all, and therefore fail to allege any that are substantially similar to works in suit and also fail to state a claim under the DMCA. ECF No. 103. Dr. Amodei has also moved to dismiss the direct infringement claim because Plaintiffs fail to allege that he copied any content himself. Anthropic will file its motion to dismiss in *BMG* by October 13, 2026. ECF No. 32.

In these cases, Plaintiffs also advance a new theory of infringement, alleging that Anthropic, Dr. Amodei, and Mr. Mann infringed Publishers' works through "torrenting." Having been denied the opportunity to amend *Concord I* to add those torrenting claims, Plaintiffs added them here based on a misguided allegation that Anthropic torrented books, including songbooks purportedly containing copies of Publishers' lyrics, to "amass a vast central library." ECF No. 93 at 3. The record will demonstrate that no such library exists and that these new claims are without merit.

**3. LEGAL ISSUES**

The Parties identify the following, non-exhaustive list of legal issues that remain in dispute:

**<u>Plaintiffs' Claims/Issues.</u>** Whether Defendants directly and/or contributorily infringed Plaintiffs' copyrights; whether that infringement is willful; whether Anthropic violated 17 U.S.C. § 1202(b), such as by intentionally removing or altering Plaintiffs' copyright management information; whether Plaintiffs are entitled to permanent injunctive relief; whether Plaintiffs are entitled to actual or statutory damages and in what amounts; and whether any other forms of relief are due to any party, including attorneys' fees.

**<u>Defendants' Statement.</u>** Whether Plaintiffs can establish ownership of the works to which they assert copyright infringement claims; the applicability of the fair use doctrine and other affirmative defenses to be raised by Defendants; whether Plaintiffs can establish that Anthropic engaged in the acts giving rise to the alleged infringement, including whether Plaintiffs can establish volitional conduct; whether Plaintiffs have established a DMCA violation; whether Plaintiffs are entitled to relief.

## 4. MOTIONS

### a. Prior and Pending Motions

<u>*Concord II:*</u>

| Movant | Motion | Date Filed | Status |
|---|---|---|---|
| *Concord II* Plaintiffs | Admin. Motion to Consider Whether *Concord Music Group, Inc., et al. v. Anthropic PBC*, Case No. 24-cv-03811-EKL-SVK (N.D. Cal.) ("*Concord I*") and *Concord II* Cases Should Be Related | Feb. 2, 2026 (*Concord II*, ECF No. 34) | Granted (*Concord II*, ECF No. 57) |
| Parties | Stipulation for Briefing Schedule Regarding Motions to Dismiss by Anthropic and Dario Amodei | Feb. 9, 2026 (*Concord II*, ECF No. 51) | Granted (*Concord II*, ECF No. 56) |
| Anthropic | Motion to Stay *Concord II* | March 10, 2026 (*Concord II*, ECF No. 59) | Denied (*Concord II*, ECF No. 88) |
| Parties | Stipulation Regarding Schedule for Amended Complaint and Motions to Dismiss by Anthropic and Dario Amodei | March 30, 2026 (*Concord II*, ECF No. 72) | Granted (*Concord II*, ECF No. 73) |
| *BMG* | Admin. Motion to Consider Whether *BMG* and *Concord I* Cases Should Be Related | April 6, 2026 (*Concord I*, ECF No. 672) | Granted (*Concord I*, ECF No. 679) |

| | | | |
|---|---|---|---|
| Benjamin Mann | Admin. Motion to Extend Deadline to Respond to Complaint | April 24, 2026 (*Concord II*, ECF No. 87) | Terminated (*Concord II*, *ECF* No. 89) |
| *Concord II* Plaintiffs and Anthropic | Stipulation Regarding Dismissal of Vicarious Infringement Claim | May 15, 2026 (*Concord II*, ECF No. 90) | Granted (*Concord II*, ECF No. 92) |
| Anthropic | Joint Discovery Dispute Statement Regarding Anthropic's Preservation of Prompt and Output Records | July 6, 2026 (*Concord II*, ECF No. 95) | Granted as Modified (*Concord II*, ECF No. 99) |
| Anthropic | Admin. Motion for Leave to File Decl. of Sarah Rodriguez in Support of Anthropic's Joint Discovery Dispute Statement | July 6, 2026 (*Concord II*, ECF No. 96) | Granted (*Concord II*, ECF No. 98) |
| Anthropic | Admin. Motion to File Under Seal Anthropic's Usage Data Information in Connection with Joint Discovery Dispute Statement (ECF No. 95) | July 6, 2026 (*Concord II*, ECF No. 97) | Granted (*Concord II*, ECF No. 100) |
| Anthropic | Partial Motion to Dismiss *Concord II* Complaint | Opening brief filed Aug. 3, 2026 (*Concord II*, ECF No. 103); Opposition brief filed Aug. 31, 2026 (*Concord II*, ECF No. 115); Reply brief filed Sept. 14, 2026 (*Concord II*, ECF No. 124) | Pending; fully briefed; oral argument currently scheduled for Nov. 4, 2026 |
| Dario Amodei | Partial Motion to Dismiss *Concord II* Complaint | Opening brief filed Aug. 3, 2026 (*Concord II*, ECF No. 104); Opposition brief filed Aug. 31, 2026 (*Concord II*, ECF No. 116); Reply brief filed Sept. 14, | Pending; fully briefed; oral argument currently scheduled for Nov. 4, 2026 |

| | | | |
|---|---|---|---|
| | | 2026 (*Concord II*, ECF No. 123) | |
| Anthropic | Admin. Motion to Consider Whether *Round Hill Music LP et al. v. Anthropic PBC,* Case No. 26-cv-08505 (N.D. Cal.) and *Concord I/BMG* Cases Should Be Related | Aug. 25, 2026 (*Concord I*, ECF No. 786) | Granted (*Concord I*, ECF No. 792) |
| *SMP-WCM* Plaintiffs | Admin. Motion to Consider Whether *SMP-WCM*, *Concord I*, *Concord II*, and *BMG* Cases Should Be Related | Aug. 31, 2026 (*Concord I*, ECF No. 791) | Granted (*Concord I*, ECF No. 799) |
| *Concord II* Plaintiffs and Benjamin Mann | Stipulation to Extend Defendant Benjamin Mann's Deadline to Amend Answer | Sept. 3, 2026 (*Concord II*, ECF No. 118) | Granted (*Concord II*, ECF No. 119) |
| *Concord II* and *BMG* Plaintiffs and Anthropic | Position Statements Regarding Inclusion of Destructive Scanning in Phase I Discovery | Sept. 11, 2026 (*Concord II*, ECF Nos. 121, 122) | Awaiting decision |

<u>*BMG*</u>:

| Movant | Motion | Date Filed | Status |
|---|---|---|---|
| BMG | Admin. Motion to Consider Whether *BMG* and *Concord I* Cases Should Be Related | April 6, 2026 (*Concord I*, ECF No. 672) | Granted (*Concord I*, ECF No. 679) |
| Parties | Stipulation for Briefing Schedule Regarding Motions to Dismiss by Anthropic | Apr. 7, 2026 (*BMG*, ECF No. 22) | Granted (*BMG*, ECF No. 28) |
| Parties | Stipulation for Setting Schedule for Filing of Amended Complaint and Response | Jul. 31, 2026 (*BMG*, ECF No. 31) | Granted (*BMG*, ECF No. 32) |
| Anthropic | Admin. Motion to Consider Whether *Round Hill Music LP et al. v. Anthropic PBC,* Case No. 26-cv- | Aug. 25, 2026 (*Concord I*, ECF No. 786) | Granted (*Concord I*, ECF No. 792) |

| | | | |
|---|---|---|---|
| | 08505 (N.D. Cal.) and *Concord I/BMG* Cases Should Be Related | | |
| *SMP-WCM* Plaintiffs | Admin. Motion to Consider Whether *SMP-WCM*, *Concord I*, *Concord II*, and *BMG* Cases Should Be Related | Aug. 31, 2026 (*Concord I*, ECF No. 791) | Granted (*Concord I*, ECF No. 799) |
| *Concord II* and *BMG* Plaintiffs and Anthropic | Position Statements Regarding Inclusion of Destructive Scanning in Phase I Discovery | Sept. 11, 2026 (*BMG*, ECF Nos. 45, 46) | Awaiting decision |

**b. Anticipated Motions**

Anthropic anticipates filing a motion to dismiss in *BMG* by October 13, 2026. The Parties anticipate filing summary judgment motions, *Daubert* motions, motions *in limine*, and other pre-trial, trial, and post-trial motions in their respective actions. To the extent disputes arise during discovery, the Parties may seek judicial intervention from Judge van Keulen to resolve such disputes.

**5. AMENDMENT OF PLEADINGS**

<u>*Concord II:*</u> The *Concord II* Plaintiffs filed their Complaint on January 28, 2026. ECF No. 1. Pursuant to the *Concord II* Parties' Stipulation and the Court's Order, *Concord II*, ECF Nos. 72–73, the *Concord II* Plaintiffs filed their First Amended Complaint on April 6, 2026, withdrawing their claim for contributory infringement against Anthropic and asserting a claim for contributory infringement against Dario Amodei and Benjamin Mann. *Concord II*, ECF No. 75. Pursuant to the *Concord II* Parties' Stipulation and the Court's Order, *Concord II*, ECF Nos. 90, 92, the *Concord II* Plaintiffs filed their Second Amended Complaint on May 21, 2026, withdrawing their vicarious liability claim against Anthropic. *Concord II*, ECF No. 93. The *Concord II* Plaintiffs reserve the right to amend their pleadings to address other ongoing discovery and/or the Court's decision on the pending motions to dismiss. *Concord II*, ECF Nos. 103, 104.

<u>*BMG*</u>*:* Plaintiff BMG filed its Complaint on March 17, 2026. Pursuant to the *BMG* Parties' Stipulation and the Court's Order, *BMG*, ECF Nos. 31, 32, BMG filed an Amended Compliant on

September 11, 2026, withdrawing its claims for contributory and vicarious infringement against Anthropic, and providing an expanded, non-exhaustive and exemplary list of musical compositions infringed by Anthropic. BMG reserves the right to amend its pleadings to address other ongoing discovery as necessary and/or in response to other case developments.

Plaintiffs propose that any motions to amend or to add Parties arising out of Phase I torrenting discovery shall be filed no later than February 2, 2027 in light of the proposed discovery schedule set forth in Section 14, *infra.* Plaintiffs intend to amend their complaints to reflect facts uniquely in Anthropic's possession that Plaintiffs expect to learn in discovery regarding Anthropic's torrenting, including in particular amending their respective Works in Suit to incorporate the full list of their copyrighted works contained in pirated books that Anthropic torrented, such that the deadline to amend or add Parties should be scheduled to permit sufficient time to investigate and identify those Works in Suit.[1]

*Defendants*: The *Concord II* and *BMG* Plaintiffs have already had the opportunity to amend and further amendment following discovery is unlikely to be warranted. In the unlikely event that Plaintiffs establish good cause to amend in accordance with Federal Rule of Civil Procedure 15(a)(2), Plaintiffs shall confer with Defendants to seek consent and shall state in the motion to amend whether the motion is opposed.

## 6. EVIDENCE PRESERVATION

The Parties certify that they have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information and that they have met and conferred pursuant to Fed. R. Civ. P. 26(f) regarding reasonable and proportionate steps taken to preserve relevant evidence.

*Concord II*: On July 6, 2026, the *Concord II* Plaintiffs and Anthropic submitted a joint discovery dispute statement regarding Anthropic's obligation to preserve Claude prompt and output data. *Concord II*, ECF No. 95. On July 16, 2026, Magistrate Judge van Keulen ordered that Anthropic preserve a random sample of 500 million deduplicated Claude records, comprising 250

[1] Plaintiffs maintain that the deadline to amend or to add parties shall not preclude further amendment or the addition of parties arising out of Phase II training and output claims. The Parties will meet and confer to set a deadline for amendment or addition of parties arising out of Phase II discovery following resolution of summary judgment motions in *Concord I*.

million records preserved prior to January 28, 2026, and 250 million records preserved between January 28, 2026 and March 24, 2026, as well as all records that contain the terms "song!," "lyric!," "verse!," or "chorus!" from the same time periods. *Concord II*, ECF No. 99. The *Concord II* Plaintiffs reserve the right to seek further relief as to Anthropic's obligation to preserve Claude prompt and output records from March 24, 2026 through the present.

BMG: On July 16, 2026, Magistrate Judge van Keulen ordered that Anthropic preserve certain prompt and output data in *Concord II*. *Concord II*, ECF No. 99. Hours later, Anthropic requested that BMG confirm its agreement, by the very next day, that Anthropic's preservation obligations for prompt and output records in *BMG* are satisfied by the *Concord II* framework. The *BMG* Parties have since discussed the issue by email and by video conference on July 31, 2026. In those discissions, Anthropic unilaterally asserted that it will not continue the going-forward preservation of prompt and output records. Anthropic's unilateral decision to abandon its preservation obligations is improper. BMG reserves its right to seek relief as to Anthropic's obligation to preserve Claude prompt and output records, but to be sure, it is Anthropic's burden to comply with its preservation obligations, and its attempt to shift that burden to BMG is not consistent with the law.

Anthropic: On July 6, 2026, the *Concord II* Plaintiffs and Anthropic submitted a joint discovery dispute statement regarding Anthropic's preservation of prompt and output records in the case. ECF No. 95. On July 16, 2026, Judge van Keulen held the following: "balancing the needs of the litigation and the burden of retaining an exponentially increasing volume of data, the Court determines that a modified version of Anthropic's retention proposal of more than 500 million records will provide a sufficiently representative sample that is proportional to the needs of the case." ECF No. 99. The *Concord II* Plaintiffs did not appeal that order under Local Rule 72-2 and therefore, Judge van Keulen's order governs the scope of preservation for prompt and output records in *Concord II*. Given the overlap in the cases and coordination between them, Anthropic reached out to the *BMG* Plaintiffs to explain that it would abide by its preservation obligations in the *BMG* case in a manner comparable to its actions in the *Concord II* case. Anthropic provided additional information to the *BMG* Plaintiffs in response to their questions and has described the

current scope of its preservation (most recently on August 22, 2026). The *BMG* Plaintiffs have not responded to Anthropic's August 22 email, proposed any additional preservation, or sought any order from the Court addressing any further preservation. Thus, for both cases, Anthropic is preserving the data set forth in the July 16, 2026 Order.

**7. DISCLOSURES**

Pursuant to Fed. R. Civ. P. 26 and in light of the Court's temporary stay of the actions (ECF No. 88) and September 2 Order, the Parties will exchange their initial disclosures for Phase I only on or before October 14, 2026.

**8. DISCOVERY**

In light of this Court's temporary stay, ECF No. 88, the Parties did not commence fact discovery until holding the Rule 26(f) Conference in connection with preparing this statement.

**Stipulations and Protocols.** The Parties have engaged in preliminary discussions to stipulate to an updated version of the *Concord I* Protective Order (*Concord I* ECF No. 293) that will apply to all five related actions against Anthropic before this Court, *see* Section 9 *infra*, to facilitate cross-use of certain discovery already taken in *Concord I* in the other actions. The Parties will promptly file any updates or modifications to the *Concord I* Protective Order as necessary.

The Parties intend to confer regarding stipulating to an updated version of the protocol from *Concord I* concerning the inspection of Anthropic's training data and source code to apply in these actions, and shall file the proposed stipulated protocol(s) as soon as practicable.

**Scope, Proposed Discovery, and Case Coordination Plan.** The Parties anticipate that the scope of fact discovery in *Concord II* and *BMG* will include, but not be limited to, Plaintiffs' claims of infringement and Defendants' affirmative defenses. Pursuant to the September 2 Order, discovery in *Concord II* and *BMG* shall proceed in a bifurcated manner, described below.

*Phase I:* Upon the Parties' Rule 26(f) Conference in connection with preparing this Joint Case Management Statement, fact discovery shall proceed with respect to Plaintiffs' claims regarding Defendants' direct infringement and/or contributory infringement by torrenting, the Works in Suit implicated by such claims, and the Defendants' affirmative defenses relating to the

same.[2] *Concord II* and *BMG* will proceed on these claims on the same discovery schedule, as set forth in Section 14, *infra*. Plaintiffs will coordinate discovery, including but not limited to serving joint written discovery requests, jointly taking depositions of Defendant witnesses, and jointly addressing discovery disputes.

*Phase II:* Pending resolution of the cross-motions for summary judgment before the Court in *Concord I*, discovery is stayed as to the following: (1) Plaintiffs' direct copyright infringement claims focused on AI training and outputs, (2) Plaintiffs' claims about removal/alteration of copyright management information, (3) the Works in Suit implicated only by those claims, (4) Defendants' affirmative defenses relating to the same, and (5) any other issue in this case not covered by Phase I. In the interim, and for the avoidance of doubt during Phase I discovery, the *Concord II* and *BMG* Plaintiffs will be granted access to all relevant *Concord I* discovery. Upon resolution of the *Concord I* cross-motions, the Parties shall meet and confer and request a conference with the Court as necessary to establish the scope and timeline of Phase II discovery for all remaining claims.

In light of the phasing of discovery, the Parties agree that it is premature to propose deadlines for expert discovery and summary judgment briefing.

**Discovery Rules Modifications.** In light of the phased and coordinated nature of discovery, the Parties believe that modifications to the applicable discovery rules are necessary.

*Joint Proposed Modifications*:

- For the purposes of all discovery other than depositions, all Plaintiffs in *Concord II* and *BMG* shall constitute a single "side" and shall be treated as part of the same case. Anthropic, Dr. Amodei, and Mr. Mann shall likewise constitute a single "side" for the purposes of all discovery other than depositions.
- Each side will serve joint discovery and will not serve duplicative discovery between the cases.

[2] The Parties also submitted statements with their respective positions on whether Plaintiffs' allegations regarding Anthropic's destructive book scanning should be included in Phase I. *Concord II*, ECF Nos. 121, 122; *BMG*, ECF Nos. 45, 46. That issue is still pending.

- Interrogatory limits will apply per side. Any single interrogatory request that is directed at multiple parties on a side shall count as one interrogatory under the discovery limits but, if necessary to properly respond to the interrogatory, will be answered separately by each group of related corporate entities (Plaintiffs) or separately by Anthropic and the individual defendants (Defendants).
- Given the anticipated timing of the Court's order on the motions for summary judgment in *Concord I*, it is unlikely that the Parties will be ready to take depositions prior to that order. Before noticing any deposition, the Parties agree to meet and confer in good faith and either stipulate to modifications of the default deposition limits or raise any disputes as to deposition limits. To the extent the Court deems it appropriate to establish deposition limits now, the Parties have included competing proposals below.

The Parties will meet and confer in good faith on any requested departures from these discovery limits.

*<u>Plaintiffs' Proposed Additional Modifications:</u>*

Because the Court's September 2 Order directed that only Phase I discovery proceed now, and that Phase II discovery shall be stayed pending the Court's ruling on the *Concord I* summary judgment motions, Plaintiffs believe it is appropriate to address discovery modifications and limits only for Phase I discovery at this time, and that it would be premature to address or set discovery limits for Phase II discovery until the Court issues its ruling on the *Concord I* summary judgment motions. For Phase II discovery modifications and limits, Plaintiffs propose that, following the Court's *Concord I* summary judgment ruling and prior to commencement of Phase II discovery, the Parties meet and confer regarding the extent to which discovery may be coordinated between actions and any additional modifications to the discovery rules as may be necessary.

It makes no sense to address Phase II discovery modifications or limits now. Addressing discovery limits for Phases I and II together, as Defendants propose, ignores that the Court's resolution of summary judgment in *Concord I* will impact the scope of, and the appropriate limits for, discovery in Phase II—indeed, this is one reason why Anthropic sought, and the Court ordered, phasing of discovery. The Parties cannot yet evaluate the appropriate scope or limits for Phase II

discovery until after the *Concord I* summary judgment ruling issues.

Further, while the Parties agreed that coordinating discovery for Phase I is appropriate given the similarities and overlap between the torrenting claims (and jointly proposed such coordination for Phase I to the Court), coordinating discovery in the same way for Phase II across the *Concord II* and *BMG* cases may not be appropriate. Critically, among other differences between the cases, the *BMG* Plaintiff's Phase II claims involve different time periods, different AI models, and different works from the *Concord II* Plaintiffs' Phase II claims that will impact how discovery proceeds. Moreover, determining whether coordination of Phase II discovery is necessary or appropriate is premature until the Court rules on the *Concord I* summary judgment motions.

The Parties and the Court need not address whether coordination for Phase II discovery is appropriate at this time—and, as the number of parties and claims involved affect the discovery limits, the Parties and the Court should not set Phase II discovery limits at this time either.

Defendants' proposals in this Joint Case Management Statement for discovery limits that will govern the *SMP-WCM* and *Round Hill* cases is improper, as the parties in those cases are not parties to this Statement and it is not being submitted on their behalf or with their consent (nor, in the case of *Round Hill*, with any participation in drafting or apparent knowledge of its contents).

While the *Concord II* and *BMG* Plaintiffs previously proposed coordinating what is now referred to as Phase II discovery, that proposal was premised on the *Concord II* AI training and output claims and CMI claims proceeding immediately on a bellwether structure (based on a representative set of 500 works in suit from *Concord II*) while *BMG*'s AI training and output and CMI claims for the time period and models at issue in *Concord I* would be stayed pending the summary judgment decisions in *Concord I*. *Concord II*, ECF No. 94 at 10–11. Now that the Court has stayed all AI training and output and CMI claims in *Concord II* and *BMG* pending the summary judgment decisions in *Concord I*, and the plaintiffs in *SMP-WCM* and *Round Hill* have since asserted similar claims, whether coordination of discovery on all of those claims may or may not be warranted should await resolution of the *Concord I* summary judgment motions.

To the extent the Court deems it necessary to establish limits on depositions for Phase I at this time, Plaintiffs propose that deposition limits will apply separately to each Phase of discovery.

For example, the limit of 10 depositions per side applies only to depositions during Phase I, and deposing an individual in Phase I will not prevent that individual from being deposed again in Phase II. Since so much about Phase II remains unknown, establishing separate limits for Phase I is the only workable way to set any discovery limits now; those separate limits result directly from the phasing of discovery that Defendants requested. Further, had these cases proceeded separately and without coordination, the *Concord II* and *BMG* plaintiffs would each be entitled to 10 depositions—20 in total (or more, if the *SMP-WCM* and *Round Hill* plaintiffs were counted as well). Contrary to Anthropic's claim that Plaintiffs' proposal doubles the number of depositions to which Plaintiffs are entitled, the proposed coordination of no more than 20 depositions across the two phases represents a significant efficiency and is reasonable in light of the different time periods and models at issue across the cases.

To the extent the Court deems it appropriate to set deposition limits for both Phases I and II at this time, the Parties should be ordered to meet and confer further regarding those deposition limits in light of the Court's guidance.

*Defendants' Proposed Additional Modifications*:

Defendants agree that it will be necessary to modify the default discovery limits. Although the *Concord II* and *BMG* Publishers initially proposed "efficiently coordinating the actions," *Concord II* ECF No. 94 at 10, Publishers now claim that consolidating discovery between *Concord II* and *BMG* in Phase II "may not be appropriate." Plaintiffs also suggest that this Court's decision to phase discovery efficiently in light of *Concord I* entitles them to twice the discovery that they are permitted under the limits. To efficiently address discovery at this juncture, Defendants propose the following:

- Coordination of discovery between the four related cases (*Concord II*, *BMG*, *Round Hill*, and *SMP-WCM*) for both Phase I and Phase II;
- The same discovery limits will apply to the entire case and not separately to each "Phase" of discovery;
- The Parties will confer regarding the timing of Phase II discovery following the Court's resolution of the *Concord I* summary judgment motions.

To the extent the Court deems it appropriate to propose deposition limits at this stage, Defendants propose the following:

- The Plaintiffs in the four related cases (*Concord II*, *BMG*, *Round Hill*, and *SMP-WCM*) will constitute a single "side" for purposes of the deposition limits;
- The parties agree to a 120-hour limit, per side, for all party depositions (including 30(b)(1) and 30(b)(6)), but excluding expert witnesses;
- Each individual who is deposed will count for a minimum of 3 hours towards the overall hours limit;
- Each individual who is deposed, in either a 30(b)(1) capacity, as a corporate designee in a 30(b)(6) capacity, or both, will only sit once, for a maximum of 10 hours, to be spread across two consecutive days as necessary;
- Absent agreement of the parties, no individual will be required to sit for more than 7 hours on a single day;
- Each witness who submits one or more expert reports may be deposed for a maximum of 7 hours on a single day concerning the opinions in those reports, whether or not that witness was previously deposed in a 30(b)(1) or 30(b)(6) capacity;
- No separate numerical limitation, other than what is outlined above, will apply to party depositions.

**Discovery Disputes.** Magistrate Judge van Keulen previously addressed the *Concord II* Plaintiffs' and Anthropic's dispute regarding Anthropic's obligation to preserve relevant materials. *Concord II*, ECF No. 99. To the extent the Parties identify additional discovery issues, they shall meet and confer to resolve such issues and seek guidance from Magistrate Judge van Keulen for ripe issues that cannot be resolved between the Parties.

## 9. RELATED CASES

The Court has deemed the following cases related to *Concord I*: (a) *Concord II* (administrative motion granted on February 18, 2026, *Concord II*, ECF No. 57); (b) *BMG* (administrative motion granted on April 14, 2026, *Concord I*, ECF No. 679); (c) *Round Hill*

(administrative motion granted on September 1, 2026, *Concord I*, ECF No. 792); (d) *SMP-WCM* (administrative motion granted on September 8, 2026, *Concord I*, ECF No. 799).

**Inclusion of Other Related Cases:** The Court's September 2 order did not address *SMP-WCM* or *Round Hill.* The *SMP-WCM* and *Round Hill* cases, which the Court ordered related to the *Concord II* and *BMG* cases on September 8 and September 1, 2026, respectively, *SMP-WCM,* ECF No. 16, *Round Hill*, ECF No. 27, assert similar infringement claims, including in particular claims related to Anthropic's torrenting. The Parties disagree regarding the extent to which these cases should be included in Phase I of discovery in the *Concord II* and *BMG* cases and the process by which issues regarding coordinating discovery in those cases should be resolved. The Parties' respective positions on coordination of the other two related cases are below.

**Plaintiffs' Statement.**

Agreed-to coordination of Phase I discovery with *SMP-WCM* case: Plaintiffs in *Concord II* and *BMG* have conferred with Plaintiffs in *SMP-WCM* (who are represented by the same counsel), and Plaintiffs in all three cases agree that entering a case management order applicable to Phase I discovery that includes *Concord II*, *BMG*, and *SMP-WCM* is appropriate and will promote judicial economy and efficiency. That is because (1) the *SMP-WCM* Plaintiffs assert similar torrenting claims to those asserted in *Concord II* and *BMG,* (2) the *SMP-WCM* Plaintiffs are willing to engage in the same coordinated Phase I discovery that the Court has ordered for *Concord II* and *BMG*, (3) the *SMP-WCM* Plaintiffs are willing to defer discovery on their other claims until after the resolution of the parties' cross-motions for summary judgment in *Concord I*, and (4) the *SMP-WCM* Plaintiffs are represented by the same counsel as the *Concord II* and *BMG* Plaintiffs, allowing for efficient coordination between cases.

Defendants agree that *SMP-WCM* should be included in Phase I discovery, and Defendants appear to agree that the terms stated herein should apply to *SMP-WCM*. Accordingly, Plaintiffs, including the Plaintiffs in *SMP-WCM*, proposed a draft of this Joint Case Management Order that included, applied to, and would be filed in *SMP-WCM*. Yet Defendants refused to agree to file an order that included *SMP-WCM* and would be filed by the parties in that case. While the Court set a separate deadline of December 2, 2026 to submit a proposed case management statement in *SMP-*

*WCM*, deferring filing a case management order until then in that case makes little sense when the discovery process that the Parties agree should include *SMP-WCM* will already be underway. Defendants' refusal makes even less sense in that Defendants herein "request that the Court order coordination of *SMP-WCM* . . . for purposes of discovery as set forth in this Case Management Order." Any request for coordination of *SMP-WCM* should be made on the docket in *SMP-WCM* by the parties to that case.

Round Hill: The Plaintiffs in *Concord II* and *BMG* take no position at this time on whether *Round Hill* should be coordinated with these cases for purposes of Phase I discovery. However, Defendants' attempt to use this Joint Case Management Statement in ***these*** cases to seek coordination of *Round Hill*, including a partial stay of discovery in that case, is improper. The plaintiffs in *Round Hill* are represented by separate counsel from the Plaintiffs in *Concord II*, *BMG*, and *SMP-WCM* who did not participate in the drafting of, and conferral regarding, this Joint Case Management Statement, and the Plaintiffs here cannot speak for the plaintiffs in *Round Hill*.

To be clear, Plaintiffs did not refuse to coordinate with the *Round Hill* plaintiffs for purposes of this Statement, as Anthropic claims. Plaintiffs are not the parties seeking to coordinate discovery in that case with these cases, so there was no reason for Plaintiffs to take affirmative steps to coordinate with the *Round Hill* plaintiffs for purposes of this Statement. Defendants, although they claim to seek coordination of all five cases, never invited the Plaintiffs in *Concord II*, *BMG*, and *SMP-WCM* to jointly confer with the *Round Hill* plaintiffs; had Defendants invited that conferral, the Plaintiffs in *Concord II*, *BMG*, and *SMP-WCM* would have willingly participated and remain willing to participate in such a conferral in the future.

Defendants do not state that they have separately conferred with the *Round Hill* plaintiffs regarding coordination, and do not even state that they have informed the *Round Hill* plaintiffs that Defendants intend to use this Statement to seek coordination of that case. The *Round Hill* plaintiffs do not appear to have had any opportunity to assert their position. As the party seeking to coordinate discovery in *Round Hill* with these cases, it is Defendants' responsibility, not Plaintiffs', to meet and confer with the *Round Hill* plaintiffs regarding Defendants' proposal as to the *Round*

*Hill* case and then submit a request in the *Round Hill* case in which all the parties to that case can be heard.

**<u>Defendants' Statement.</u>**

There are five related cases with substantially similar allegations. While *Concord II* and *BMG* were filed first, no party disagrees that all five cases allege substantially similar claims based on substantially similar facts and theories. Plaintiffs proposed to include *SMP-WCM* in this statement but were unwilling to include the fifth related case, *Round Hill*. Defendants do not agree that it would make sense to coordinate four cases but leave out the fifth, because Plaintiffs refused to coordinate with *Round Hill* for purposes of this statement. Accordingly, Defendants respectfully request that the Court order coordination of the related *SMP-WCM* and *Round Hill* cases for purposes of discovery as set forth in this Case Management Order, including (1) that all plaintiffs in the four related cases engage in the same coordinated Phase I discovery that the Court has ordered for *Concord II* and *BMG*, and (2) that all parties defer discovery on the claims overlapping with *Concord I* until resolution of the parties' cross-motions for summary judgment in *Concord I*.

On September 15, the *Concord II* publishers asked for Defendants availability to confer and the conferral was set for September 22. The *Concord II* Publishers (who share counsel with the *SMP-WCM* Publishers) took the position that *SMP-WCM* was included in that conferral, but they did not invite counsel for *Round Hill*. During the September 22 conferral, the *Concord II* publishers confirmed that they had been in contact with counsel for *Round Hill* but took the position that Anthropic was required to confer separately with *Round Hill* to address coordination between the *Round Hill* case and these cases. Because the Court set a separate, combined, initial case management conference in *SMP-WCM* and *Round Hill*, Defendants maintain it is not appropriate to include in this statement one, but not both, of those cases. Counsel for the *SMP-WCM* Plaintiffs have indicated they are amenable to engaging in the same coordinated Phase I discovery as the *Concord II* and *BMG* Plaintiffs. To the extent the Court believes a revised statement from parties to all four cases is required, Defendants welcome the opportunity to submit a revised joint statement including *SMP-WCM* and *Round Hill*.

**10. RELIEF**

**Plaintiffs' Position.** Plaintiffs seek the following relief, as detailed more fully in their operative complaints (*Concord II*, ECF No. 93; *BMG*, ECF No. 44): judgment on each of Plaintiffs' claims, including, as applicable, that Anthropic directly infringed Plaintiffs' copyrights under the Copyright Act, that Dario Amodei and Benjamin Mann directly and contributorily infringed Plaintiffs' copyrights under the Copyright Act (*Concord II* only), that Anthropic unlawfully removed and/or altered Plaintiffs' copyright management information in violation of 17 U.S.C. § 1202, and that such infringement and unlawful activities were willful; under 17 U.S.C. §§ 504 and 1203(c), statutory damages including in an amount up to $150,000 per work infringed and $25,000 per copyright management information violation, respectively, or in the alternative, at Plaintiffs' election, Plaintiffs' actual damages and Anthropic's profits; an order for such equitable relief under Titles 17, 28, and/or the Court's inherent authority as is necessary to prevent or restrain infringement of Plaintiffs' copyrights, including permanent injunctive relief; an order requiring Defendants to provide an accounting of the training data, training methods, and known capabilities of Anthropic's AI models, and to destroy under the Court's supervision all infringing copies of Plaintiffs' copyrighted works in Defendants' possession or control; Plaintiffs' reasonable attorneys' fees and costs in this action, pursuant to 17 U.S.C. § 505 and/or 17 U.S.C. § 1203(b)(4)-(5); pre- and post-judgment interest on any monetary award made part of the judgment; and such other and further relief as the Court deems proper.

**Defendants' Position.** Defendants dispute that Plaintiffs are entitled to any relief and reserve all of their defenses to liability and damages. Defendants further reserve the rights to seek costs and expenses, including their reasonable attorneys' fees.

**11. SETTLEMENT AND ADR**

*Concord II:* Pursuant to ADR L.R. 3-5(b), ADR Certifications were filed by the *Concord II* Parties on April 7, 2026, ECF Nos. 78–84. Certain of the *Concord II* Plaintiffs and Anthropic previously discussed settlement in connection with the *Concord I* case in early May 2024 and concluded that the issues in this case were not sufficiently ripe for ADR or productive settlement discussions. The *Concord I* Plaintiffs and Anthropic subsequently participated in a mediation in

August and September 2025, which was unsuccessful. At this time, the *Concord II* Parties do not believe ADR will be productive or otherwise result in meaningful issue resolution in light of the significant overlap between the issues in *Concord II* and the pending *Concord I* summary judgment cross-motions, as well as the stay of discovery on the Plaintiffs' training and output claims in *Concord II* and *BMG*.

*BMG:* The Parties have not yet filed ADR Certifications but will meet and confer and file such Certifications within 21 days of filing this Joint Case Management Statement.

**12. OTHER REFERENCES**

Currently, the Parties do not believe these cases are suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

The *Concord II* and *BMG* Actions have been referred to Magistrate Judge van Keulen for discovery disputes.

**13. NARROWING OF ISSUES**

Pursuant to the September 2, 2026 status conference and subsequent Order, the Parties understand that the Court's resolution of the cross-motions for summary judgment in *Concord I* may bear on the Phase II claims in *Concord II* and *BMG.* Upon resolution of the *Concord I* cross-motions, the Parties shall meet and confer to determine the appropriate scope of the remaining issues for Phase II discovery and submit any necessary case management updates to the Court.

The Parties are currently unable to narrow any additional issues by agreement or otherwise.

**14. SCHEDULE**

The Parties in all actions have met and conferred and propose the following case schedule for Phase I discovery:

| Event | Deadline |
|---|---|
| Motion to Amend or Add Parties Arising Out of Phase I Discovery | February 2, 2027 |
| Deadline to Complete Initial ADR Session | N/A (see Section 11, *supra*) |

| | |
|---|---|
| Further Case Management Conference | 21 days after the Court resolves the *Concord I* summary judgment cross-motions, as may be accommodated by the Court's calendar |
| Phase II Fact Discovery Begins | Following a conferral by the parties after the Court's rulings on the *Concord I* summary judgment cross-motions |
| Close of Discovery | To be set after Court's rulings on *Concord I* summary judgment cross-motions |
| Additional Case Deadlines | To be scheduled after further Case Management Conference and the Court's rulings on the *Concord I* summary judgment cross-motions |

**15. TRIAL**

Plaintiffs in all actions have requested a trial by jury on all claims. Trial has not been scheduled in any action. The Parties shall meet and confer regarding the most efficient process for trial(s) across all actions and submit a proposal to the Court at an appropriate time.

**16. DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS**

***Concord II*:** Pursuant to Civil L.R. 3-15, the *Concord II* Plaintiffs and Defendants filed their Certificates of Interested Entities or Persons, ECF Nos. 5–23, 49, 128–129, and disclosed the following entities:

*Concord II* Plaintiffs: ABKCO Music & Records, Inc., a New York corporation with its principal place of business in New York; Universal Music Publishing, Inc., a California corporation with a principal place of business in California, which is wholly owned by Universal Music Group Holdings, Inc.; UMG Latin Music, Inc., which is wholly owned by UMG Recordings, Inc.; UMG Recordings, Inc., which is wholly owned by Universal Music Group Holdings, Inc.; Universal Music Publishing MGB Holding UK Limited, which is wholly owned by Universal Music Holdings Limited; Universal Music Leisure Limited, which is wholly owned by Universal Music Holdings Limited; Universal Music Holdings Limited, which is wholly owned by Universal International Music B.V.; Universal Music AB, which is wholly owned by Universal Music Group B.V.; Universal International Music B.V., which is wholly owned by Universal Music Group, N.V.; Universal Music Group Holdings, Inc., which is wholly owned by Universal Music Group, Inc.;

Universal Music Group, Inc., which is wholly owned by Universal Music Group, N.V; Universal Music Group, N.V., a publicly held corporation; more than 10% of Universal Music Group, N.V.'s stock is held by Bollore SE.

On September 1, 2026, BMG and *Concord II* Plaintiff Concord Music Group completed a business transaction combining their two business entities. Accordingly, BMG and Concord Music Group shall update their corporate disclosures as necessary.

Anthropic: Pursuant to Civil L.R. 3-15, Anthropic filed its Certification of Conflicts and Interested Entities or Persons and disclosed the following listed persons, associations of persons, firms, partnerships, corporations (including, but not limited to, parent corporations), or other entities (i) have a financial interest in the subject matter in controversy or in a party to the proceeding; or (ii) have a non-financial interest in that subject matter or in a party that could be substantially affected by the outcome of this proceeding: (1) Google LLC, which is a wholly owned subsidiary of Alphabet, Inc., (2) Amazon Web Services, Inc., which is a wholly owned subsidiary of Amazon.com, Inc.

***BMG*:** Pursuant to Civil L.R. 3-15, BMG filed its Certificate of Interested Entities or Persons, *BMG* ECF No. 5, and disclosed the following entities: Bertelsmann SE & Co. KGaA and Bertelsmann, Inc.

**17. PROFESSIONAL CONDUCT**

All attorneys of record for the Parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.

Date: September 30, 2026
By: */s/ Corey Miller*

**OPPENHEIM + ZEBRAK, LLP**
Matthew J. Oppenheim
Nicholas C. Hailey
Corey Miller
(admitted *pro hac vice*)
4530 Wisconsin Ave., NW, 5th Floor
Washington, DC 20016
Telephone: (202) 480-2999
matt@oandzlaw.com
nick@oandzlaw.com

Respectfully submitted,
By: */s/ Sonal N. Mehta*

**WILMER CUTLER PICKERING HALE AND DORR LLP**

SONAL N. MEHTA (SBN 222086)
sonal.mehta@wilmerhale.com
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Telephone: (650) 858-6000

LOUIS W. TOMPROS (*pro hac vice*)

corey@oandzlaw.com

Bret Matera
Timothy Chung
Michelle Gomez-Reichman
(admitted *pro hac vice*)
461 5th Avenue, 19th Floor
New York, NY 10017
Telephone: (212) 951-1156
bmatera@oandzlaw.com
tchung@oandzlaw.com
mgomez-reichman@oandzlaw.com

*Attorneys for Concord II* and *BMG Plaintiffs*

**OPPENHEIM + ZEBRAK, LLP**
Jennifer Pariser
Andrew Guerra
(admitted *pro hac vice*)
461 5th Avenue, 19th Floor
New York, NY 10017
Telephone: (212) 951-1156
jpariser@oandzlaw.com
andrew@oandzlaw.com

**COBLENTZ PATCH DUFFY & BASS LLP**
Jeffrey G. Knowles (SBN 129754)
Thomas A. Harvey (SBN 235342)
Bina G. Patel (SBN 315352)
One Montgomery Street, Suite 3000
San Francisco, CA 94104
Telephone: (415) 772-5795
ef-jgk@cpdb.com
ef-tah@cpdb.com
ef-bgp@cpdb.com

**COWAN, LIEBOWITZ & LATMAN, P.C.**
Richard S. Mandel
Jonathan Z. King
Richard Dannay
(admitted pro hac vice)
114 West 47th Street
New York, NY 10036-1525
Telephone: (212) 790-9200
rsm@cll.com
jzk@cll.com
rxd@cll.com

*Attorneys for Concord II Plaintiffs*

Louis.Tompros@wilmerhale.com
60 State Street
Boston, MA 02109
Telephone: (617) 526-6220

ARI HOLTZBLATT (SBN 354361)
ari.holtzblatt@wilmerhale.com
ROBIN C. BURRELL (*pro hac vice*)
robin.burrell@wilmerhale.com
2100 Pennsylvania Ave, NW
Washington, DC 20037
Telephone: (202) 663-6000

ALEX W. MILLER (*pro hac vice*)
alex.miller@wilmerhale.com
JARED V. GRUBOW (*pro hac vice*)
jared.grubow@wilmerhale.com
**WILMER CUTLER PICKERING**
**HALE AND DORR LLP**
250 Greenwich Street
New York, NY 10007
Telephone: (212) 230-8800

*Attorneys for Defendant Anthropic PBC*

By: /s/ *Robert A. Jacobs*
**MANATT, PHELPS & PHILLIPS, LLP**
ROBERT A. JACOBS (SBN 160350)
rjacobs@manatt.com
NATHANIEL L. BACH (SBN 246518)
nbach@manatt.com
EVAN D. COOPER (*pro hac vice*)
ecooper@manatt.com
2049 Century Park East, Suite 1700
Los Angeles, California 90067
Telephone: 310.312.4000
Facsimile: 310.312.4224

PRANA A. TOPPER (*pro hac vice*)
ptopper@manatt.com
7 Times Square, 23rd Floor
New York, NY 10036
Telephone: 212.790.4500
Facsimile: 212.790.4545

*Attorneys for Plaintiff BMG Rights Management (US) LLC*

By: /s/ *Grace Yang*
**CONRAD | METLITZKY | KANE LLP**
GRACE YANG (CA Bar No. 286635)
gyang@conmetkane.com
MIRANDA KANE (CA Bar No. 150630)
mkane@conmetkane.com
FELIPE CORREDOR (CA Bar No. 295692)
hesaghoulyan@conmetkane.com
217 Leidesdorff Street
San Francisco, CA 94111
Tel: (415) 343-7100
Fax: (415) 343-7101

*Attorneys for Defendants Dr. Dario Amodei and Benjamin Mann*

**SIGNATURE ATTESTATION PURSUANT TO CIVIL L.R. 5-1(h)**

Pursuant to Civil L.R. 5-1(h), I hereby attest that concurrence in the filing of this document was obtained from all other signatories of this document. I declare under penalty of perjury that the foregoing is true and correct.

Dated: September 30, 2026

*/s/ Corey Miller*
Corey Miller