SONAL N. MEHTA (SBN 222086)
sonal.mehta@wilmerhale.com
**WILMER CUTLER PICKERING**
**HALE AND DORR LLP**
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Telephone: (650) 858-6000

ALEX W. MILLER (*Pro Hac Vice*)
alex.miller@wilmerhale.com
JARED V. GRUBOW (*Pro Hac Vice*)
jared.grubow@wilmerhale.com
**WILMER CUTLER PICKERING**
**HALE AND DORR LLP**
250 Greenwich Street
New York, NY 10007
Telephone: (212) 230-8800

LOUIS W. TOMPROS (*Pro Hac Vice*)
louis.tompros@wilmerhale.com
**WILMER CUTLER PICKERING**
**HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000

ARI HOLTZBLATT (SBN 354361)
ari.holtzblatt@wilmerhale.com
ROBIN C. BURRELL (*Pro Hac Vice*)
robin.burrell@wilmerhale.com
**WILMER CUTLER PICKERING**
**HALE AND DORR LLP**
2100 Pennsylvania Ave, NW
Washington, DC 20037
Telephone: (202) 663-6000

*Attorneys for Defendant*
**ANTHROPIC PBC**

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

BMG RIGHTS MANAGEMENT (US) LLC,

Plaintiff,

v.

ANTHROPIC PBC,

Defendant.

Case No. 5:26-cv-02334-EKL-SVK

**DEFENDANT ANTHROPIC PBC'S NOTICE OF MOTION AND MOTION FOR PARTIAL DISMISSAL**

Hearing Date: February 24, 2027
Time: 10:00 a.m.
Judge: Hon. Eumi K. Lee

# TABLE OF CONTENTS

Page(s)

INTRODUCTION ....................................................................................................1

SUMMARY OF THE ALLEGATIONS ....................................................................3

LEGAL STANDARD ............................................................................................4

ARGUMENT ..........................................................................................................4

I. BMG Does Not Plausibly Allege Infringement In Outputs By Models Released After *Concord I* (Count I)..........................................................4

A. BMG Does Not Identify Any Outputs After *Concord I* ........................4

B. BMG Does Not Have Standing To Seek Injunctive Relief On Outputs ..........................................................................7

II. The Court Should Dismiss BMG's DMCA Claim (Count III)..........................7

A. Claude's Outputs Do Not Violate The DMCA.....................................7

B. BMG Does Not Plausibly Allege That Anthropic Removed CMI In Training..........................................................................8

C. BMG Does Not Plausibly Allege The Required Double Scienter.........9

III. The Court Should Dismiss These Claims With Prejudice...............................11

CONCLUSION.......................................................................................................12

## TABLE OF AUTHORITIES

Page(s)

### CASES

*Andersen v. Stability AI Ltd.*,
744 F. Supp. 3d 956 (N.D. Cal. 2024) .......... 2, 3, 8

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 4, 8

*Becton, Dickinson & Co. v. Cytek Biosciences Inc.*,
2020 WL 1877707 (N.D. Cal. Apr. 15, 2020) .......... 4, 5

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 4

*Berni v. Barilla S.p.A.*,
964 F.3d 141 (2d Cir. 2020) .......... 7

*Blizzard Ent., Inc. v. Lilith Games (Shanghai) Co.*,
149 F. Supp. 3d 1167 (N.D. Cal. 2015) .......... 5

*Concord Music Grp., Inc. v. Anthropic PBC*,
2025 WL 1487988 (N.D. Cal. Mar. 26, 2025) .......... 3, 6

*Concord Music Grp., Inc. v. Anthropic PBC*,
2025 WL 4808984 (N.D. Cal. Oct. 6, 2025) .......... 10, 11

*Doe 1 v. GitHub, Inc.*,
2026 WL 2728464 (9th Cir. Sept. 16, 2026) .......... *passim*

*Dolls Kill, Inc. v. Zoetop Bus. Co.*,
2022 WL 16961477 (C.D. Cal. Aug. 25, 2022) .......... 8

*Falkner v. General Motors LLC*,
393 F. Supp. 3d 927 (C.D. Cal. 2018) .......... 8

*Free Speech Sys., LLC v. Menzel*,
390 F. Supp. 3d 1162 (N.D. Cal. 2019) .......... 8

*Hikma Pharms. USA Inc. v. Amarin Pharma, Inc.*,
608 U.S. 580 (2026) .......... 6

*In re Facebook, Inc.*,
821 F. Supp. 3d 1130 (N.D. Cal. 2026) .......... 7

*In re Gilead Scis. Sec. Litig.*,
536 F.3d 1049 (9th Cir. 2008) .......... 4

*In re Google Generative AI Copyright Litig.*,
809 F. Supp. 3d 903 (N.D. Cal. 2025) .......... 5

*Intercept Media, Inc. v. OpenAI, Inc.*,
767 F. Supp. 3d 18 (S.D.N.Y. 2025)........10

*Justice v. Uncharted Labs, Inc.*,
2026 WL 1430232 (S.D.N.Y. May 21, 2026)........6

*Kendall v. Visa U.S.A., Inc.*,
518 F.3d 1042 (9th Cir. 2008)........11

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018)........7

*Kling v. World Health Org.*,
532 F. Supp. 3d 141 (S.D.N.Y. 2021)........12

*Logan v. Meta Platforms, Inc.*,
636 F. Supp. 3d 1052 (N.D. Cal. 2022)........11

*O'Neal v. Sideshow, Inc.*,
583 F. Supp. 3d 1282 (C.D. Cal. 2022)........10

*Opperman v. Path, Inc.*,
84 F. Supp. 3d 962 (N.D. Cal. 2015)........7, 11

*Sandman, Inc. v. San Benito Cnty.*,
839 F. Supp. 3d 865 (N.D. Cal. 2026)........6

*Scilex Pharms., Inc. v. Sanofi-Aventis U.S. LLC*,
2022 WL 20286688 (N.D. Cal. Feb. 24, 2022)........11

*Skidmore v. Led Zeppelin*,
952 F.3d 1051 (9th Cir. 2020)........2, 4

*Soo Park v. Thompson*,
851 F.3d 910 (9th Cir. 2017)........6

*Stevens v. Corelogic, Inc.*,
899 F.3d 666 (9th Cir. 2018)........9, 10

*Summers v. Earth Island Inst.*,
555 U.S. 488 (2009)........7

*Tremblay v. OpenAI, Inc.*,
716 F. Supp. 3d 772 (N.D. Cal. 2024)........10

**STATUTES, RULES, AND REGULATIONS**

17 U.S.C. § 1202(a)........9

17 U.S.C. § 1202(b)........3, 9

Fed. R. Civ. P. 12(b)(6)........4

## NOTICE OF MOTION AND MOTION TO DISMISS

PLEASE TAKE NOTICE THAT, on February 24, 2027, at 10:00 a.m. in Courtroom 7 of the U.S. District Court for the Northern District of California, San Jose Division, at 280 South 1st Street, San Jose, CA, this Motion for Partial Dismissal filed by Defendant Anthropic PBC ("Anthropic") will be heard.

Anthropic respectfully moves for partial dismissal of Count I and full dismissal of Count III of Plaintiff BMG Rights Management (US) LLC's Amended Complaint ("AC") filed on September 10, 2026 (Dkt. 44). Anthropic's Motion for Partial Dismissal is based on this Notice of Motion, the supporting Memorandum of Points and Authorities, and the concurrently filed Declaration of Robin C. Burrell in support of Anthropic's instant motion ("Burrell Decl."). In accordance with Section VIII.A of Judge Lee's Civil Standing Order, the undersigned counsel certifies that counsel for Anthropic met and conferred with Plaintiff's counsel regarding the bases for this Motion on October 5, 2026.

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

BMG's suit follows two others by its publishing family and has the same defects. Relying on examples from 2023, BMG alleges that Anthropic infringed BMG's copyrights when Claude generated outputs that included lyrics. AC ¶¶ 101-111. BMG also asserts that Anthropic violated the Digital Millennium Copyright Act ("DMCA") when (1) Claude output BMG's lyrics without copyright management information ("CMI"); and (2) Anthropic removed CMI from lyrics in training. AC ¶¶ 122-133. Only two things have changed since the earlier cases. First, Anthropic has expanded and improved its guardrails against copyright infringement, including in the more recent Claude models BMG targets. BMG identifies no allegedly infringing outputs by these models, despite acknowledging that Anthropic operates numerous models with distinct features trained in different ways. *E.g.*, AC ¶ 39 & nn.8-9. Second, the Ninth Circuit rejected each of BMG's DMCA theories in *Doe 1 v. GitHub, Inc.*, 2026 WL 2728464 (9th Cir. Sept. 16, 2026). Anthropic therefore moves to dismiss with prejudice: (1) BMG's direct infringement claim for outputs by Claude models released after the filing of *Concord Music Group, Inc. v. Anthropic PBC*, No. 5:24-cv-03811 (N.D.

Cal. Oct. 18, 2023) ("*Concord I*"); and (2) BMG's DMCA claim in full.[1]

*First*, BMG does not plausibly allege infringement by any Claude model released after the filing of the *Concord I* complaint. To state a direct infringement claim, BMG must identify outputs that are "substantially similar to the plaintiff's copyrighted work." *Skidmore v. Led Zeppelin*, 952 F.3d 1051, 1064 (9th Cir. 2020) (en banc). BMG alleges six purportedly infringing outputs. AC ¶¶ 58-63. BMG took each of these examples from a November 16, 2023 declaration by the *Concord I* investigator. *Concord I*, Dkt. 49. Each involves a Work in Suit from *Concord I* and came from a Claude model released before the *Concord I* complaint. *Id.* BMG concedes that Anthropic strengthened Claude's guardrails after that complaint, and admits those guardrails now "prevent output related to" the songs "mentioned in *Concord I*." AC ¶¶ 75-77. Because BMG's only examples predate those improvements, BMG has not plausibly alleged substantially similar outputs by any model released after the *Concord I* complaint. For the same reason, BMG has not identified any injury caused by those models, and thus lacks standing to seek injunctive relief against their outputs.

*Second*, BMG does not plausibly allege that Claude's outputs violated the DMCA. BMG claims Claude reproduced lyrics without CMI. AC ¶¶ 127-128. The Ninth Circuit recently held that materially identical allegations failed to state a DMCA claim. The statute "requires taking away or changing attribution information from an ***existing*** work." *GitHub*, 2026 WL 2728464, at *5. An LLM like Claude "create[s] ***new*** works that never contained that information." *Id.* at *1. Because an LLM's outputs "cannot reasonably be described as a copy of [plaintiff's work] from which CMI has been removed," BMG's outputs theory does not state a claim. *Id.* at *5. And here, BMG has not even alleged which works Claude supposedly reproduced without CMI, or when, or in what outputs.

*Third*, *GitHub* also precludes BMG's DMCA training theory. AC ¶ 126. BMG's "existing protected works" are musical compositions. *GitHub*, 2026 WL 2728464, at *5; AC ¶ 1. The complaint does not plausibly allege that Anthropic removed CMI from compositions during training. BMG's specific allegations are limited to lyrics, which are only a portion of the compositions. *See Andersen v. Stability AI Ltd.*, 744 F. Supp. 3d 956, 971 (N.D. Cal. 2024)

[1] Unless noted, emphasis is added and internal quotation marks and citations are omitted.

(requiring removal from "plaintiff's work in its entirety").

*Finally*, all of BMG's DMCA theories fail because the complaint does not allege the necessary double scienter. BMG must plausibly allege that Anthropic had reasonable grounds to know that removing CMI or distributing works without CMI "will induce, enable, facilitate, or conceal" infringement. 17 U.S.C. § 1202(b). But BMG does not explain how removing CMI during internal training processes would "induce, enable, facilitate, or conceal" infringement. And its only output examples show Claude ***providing*** the songs' writers and titles. AC ¶¶ 58-63. This Court has already dismissed a similar claim because "the contradictory nature of [such] allegations undermines the[] argument that CMI was intentionally removed." *Concord Music Grp., Inc. v. Anthropic PBC*, 2025 WL 1487988, at *7 (N.D. Cal. Mar. 26, 2025).

The Court should grant Anthropic's motion with prejudice on the output-infringement claim for models released after the filing of *Concord I* (Count I) and on the DMCA claim in its entirety (Count III). *GitHub* precludes BMG's DMCA claim outright, making any amendment futile. Anthropic also put BMG on notice of the defects in its direct infringement and DMCA claims months before BMG filed its amended complaint. Burrell Decl. Ex. A. BMG chose not to fix them, and nothing entitles it to a third try.

**SUMMARY OF THE ALLEGATIONS**

Anthropic offers Claude through a family of models that includes Claude Haiku, Claude Sonnet, Claude Opus, Claude Fable, and Claude Mythos. AC ¶ 39. Anthropic designed and trained these models for different uses. AC ¶ 39 nn.8-9. Anthropic regularly releases new versions of these models (i.e., Claude Opus 3, Claude Opus 4, Claude Opus 5). AC ¶ 39.

BMG alleges that Anthropic infringed BMG's copyrights when Claude models output lyrics. AC ¶¶ 101-111. BMG's general theory is that Claude memorized BMG's lyrics during training and then regurgitated that data to users. AC ¶ 103. BMG concedes that Anthropic has implemented guardrails designed to prevent Claude from reproducing lyrics, then improved those guardrails over time. AC ¶¶ 74-77. BMG provides no examples of Claude outputs—allegedly infringing or otherwise—after the filing of *Concord I*.

BMG further alleges that Anthropic violated the DMCA by (1) removing CMI from BMG's

lyrics and then distributing those lyrics in Claude's outputs; and (2) removing CMI during training. AC ¶¶ 5, 79-84, 122-133. On the first theory, BMG asserts that Claude "generat[es] outputs that copy BMG's lyrics while omitting the CMI." AC ¶¶ 83, 127-128. On the second, BMG claims Anthropic removed CMI "from lyrics" in training data through a "cleaning process," then "removed any remaining CMI" in an "encoding process." AC ¶¶ 5-6, 81. During "cleaning," Anthropic allegedly "cop[ied] BMG's copyrighted lyrics from websites, such as those of BMG's licensees, and then appl[ied] algorithms that remove copyright notices and other CMI from the copied text" before using that text to train its models. AC ¶ 126. BMG does not say how Anthropic removed CMI during "encoding." AC ¶ 33. BMG further alleges that Anthropic "knowingly removed or altered CMI from torrented works" and that it "us[ed] third-party datasets containing BMG's lyrics previously stripped of their CMI." AC ¶¶ 81-82.

## LEGAL STANDARD

To withstand a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A] formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Court need not accept allegations that are "merely conclusory," nor should it make unwarranted factual deductions or unreasonable inferences. *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055-56 (9th Cir. 2008).

## ARGUMENT

### I. BMG Does Not Plausibly Allege Infringement In Outputs By Models Released After *Concord I* (Count I)

#### A. BMG Does Not Identify Any Outputs After *Concord I*

The Court should dismiss BMG's output-infringement claim for Claude models released after the filing of *Concord I.* To state a claim, BMG must plausibly allege that there are Claude outputs "substantially similar to the plaintiff's copyrighted work." *Skidmore*, 952 F.3d at 1064. That requires pleading "non-speculative facts about what [the defendant] infringed and how." *Becton, Dickinson & Co. v. Cytek Biosciences Inc.* ("*Becton*"), 2020 WL 1877707, at *6 (N.D. Cal. Apr. 15, 2020) (alteration in *Becton*). Statements that a party "copie[d]" or "distribute[d]" works, or infringed

copyrights, are nothing more than "formulaic recitation[s] of the elements of a [copyright] cause of action" that a court cannot consider when assessing plausibility. *Id.* (alterations in *Becton*). And while BMG "need not specify each and every instance of infringement at the pleading stage," it must allege "what parts" or "portions" of its lyrics "were copied" and "in what [Claude models] such copying is manifest." *Id.*; *see also Blizzard Ent., Inc. v. Lilith Games (Shanghai) Co.*, 149 F. Supp. 3d 1167, 1173 (N.D. Cal. 2015).

These pleading standards require BMG to plausibly allege infringement by specific Claude models. *See In re Google Generative AI Copyright Litig.*, 809 F. Supp. 3d 903, 913-14 (N.D. Cal. 2025). This Court's *Google* decision applied the same rule. There, the plaintiffs included 16 different generative AI models in their direct infringement claim. *Id.* at 913. Google moved to dismiss the claim as to particular models. It argued that the plaintiffs "cannot open the door to discovery into any and all of Google's generative AI models or products, where Plaintiffs have failed to make any allegations connecting those models or products to Plaintiffs' works." *Id.* at 914. This Court concluded that the plaintiffs had plausibly alleged copyright infringement by only 6 of the 16 models. *Id.* The Court then dismissed the infringement claim as to the other 10. *Id.*

*Google*'s logic requires dismissal of BMG's output claim for all Claude models released after the filing of *Concord I*. BMG has not alleged substantially similar outputs from any model released after that date. BMG provides only six examples of allegedly infringing outputs. AC ¶¶ 58-63. The *Concord I* investigator generated these outputs before that suit. BMG concedes that models released after the filing of *Concord I* all include improved copyright guardrails. AC ¶ 75. And BMG alleges that those guardrails "prevent output related to a specific list of songs (those mentioned in *Concord I*)." AC ¶ 76. Because each of BMG's output examples comes from that "specific list of songs," they do not make infringement by later models of those songs or any others plausible.[2]

That leaves BMG to resort to improper "information and belief" allegations about later infringement. AC ¶ 76. A plaintiff can rely on information-and-belief allegations only when "the

[2] BMG does not specify the source of its examples. But they are identical to prompts and outputs the *Concord I* plaintiffs publicly filed on November 16, 2023, to show the results of their pre-suit investigation. *Compare* AC ¶¶ 58-63, *with Concord I*, Dkt. 49-3 at 141, 160; *Concord I*, Dkt. 49-4 at 26, 63, 144; *Concord I*, Dkt. 49-5 at 19.

facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible." *Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017). BMG's allegations do not meet either condition.

The contents of Claude's outputs are not "peculiarly within" Anthropic's "possession and control." *Soo Park*, 851 F.3d at 928. Claude is publicly accessible. AC ¶ 30. BMG can prompt Claude for lyrics and "demonstrat[e] infringing outputs . . . if they exist." *Justice v. Uncharted Labs, Inc.*, 2026 WL 1430232, at *2 (S.D.N.Y. May 21, 2026).

No "factual information" shows Anthropic's guardrails address only lyrics from *Concord I*. *Soo Park*, 851 F.3d at 928. To the contrary: BMG relies on documents that explain Anthropic's broader protections. *See, e.g.*, AC ¶ 39 nn.8-9 (citing system cards that describe "ethical and behavioral principles that the model uses to guide its outputs" and training to prevent models from assisting "violations of our Usage Policy"). These contradictions make later infringement implausible. *See Concord*, 2025 WL 1487988, at *7; *Sandman, Inc. v. San Benito Cnty.*, 839 F. Supp. 3d 865, 868 (N.D. Cal. 2026) ("A court need not accept as true allegations that contradict exhibits attached to and thus incorporated within the complaint."). At a minimum, BMG has not excluded the "obvious alternative explanation" that Claude's guardrails apply more broadly than the specific works in *Concord I*. *Hikma Pharms. USA Inc. v. Amarin Pharma, Inc.*, 608 U.S. 580, 590 (2026) (allegations must "rule out obvious alternative explanation[s] for the defendant's conduct").

Other allegations further contradict BMG's claims about the guardrails. For example, BMG relies on a declaration from the *Bartz* litigation against Anthropic. AC ¶ 42 n.13 (citing *Bartz v. Anthropic PBC*, No. 4:24-cv-5417 (N.D. Cal. Jan. 21, 2026), Dkt. 554). The exhibits to that declaration explain Anthropic's multilayered guardrails. *Bartz*, No. 4:24-cv-5417 (N.D. Cal. Jan. 21, 2026), Dkt. 555-7 at 3-5. For example, Anthropic "has a Constitutional AI principle against substantially reproducing copyrighted content," and trains Claude to "avoid reproducing portions of copyrighted text in a way that could infringe on copyright." *Id.* at 4. And Anthropic uses a "specially trained classifier model," called "Prompt Shield," "to detect when a user attempts to generate an output that … may substantially reproduce copyrighted content." *Id.* Prompt Shield then instructs

Claude to "not provide the requested output." *Id.* The contradictions between the cited materials and BMG's allegations again make BMG's claims implausible.[3]

**B. BMG Does Not Have Standing To Seek Injunctive Relief On Outputs**

BMG lacks standing to seek injunctive relief on infringement in outputs for the same reasons. "[T]o maintain an action for injunctive relief, a plaintiff cannot rely on past injury . . . but must show a likelihood that [it] . . . will be injured in the future." *Berni v. Barilla S.p.A.*, 964 F.3d 141, 147 (2d Cir. 2020). "[S]uch a threat of future injury must be 'actual and imminent, not conjectural or hypothetical.'" *Id.* (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)). BMG has not plausibly alleged substantially similar outputs after *Concord I*. It therefore "cannot seek injunctive relief against [Anthropic] because no realistic threat exists that the complained-of conduct is ongoing or will be repeated." *Opperman v. Path, Inc.*, 84 F. Supp. 3d 962, 988 (N.D. Cal. 2015).

**II. The Court Should Dismiss BMG's DMCA Claim (Count III)**

**A. Claude's Outputs Do Not Violate The DMCA**

BMG's outputs theory does not state a claim. The DMCA prohibits removing CMI only "from a copy of an existing protected work." *GitHub*, 2026 WL 2728464, at *1. An LLM like Claude "instead create[s] new works that never contained that information." *Id.* at *1, *5-7.

*GitHub* held that materially identical allegations did not state a claim. The plaintiffs there asserted that an LLM trained on their works reproduced copies without CMI. 2026 WL 2728464, at *1. They claimed that removing CMI from these outputs and then distributing them to users violated the DMCA. *Id.* The Ninth Circuit disagreed. The plaintiffs' output allegations "describe[d] a process through which [the LLM] generates new works," rather than any "action taken with respect to CMI attached to an existing work." *Id.* at *7. In particular, the plaintiffs alleged that the LLM "relie[d] on a complex probabilistic process to predict the most likely solution to a given prompt," based on "statistical patterns governing the structure of" its training materials. *Id.* BMG describes Claude the

---

[3] BMG cites these documents describing Claude to support its infringement claim. AC ¶¶ 39 nn.8-9, 42 n.13. Because Claude's functionality and guardrails "form[] the basis of" BMG's claim, the Court may consider the entirety of the cited documents. *In re Facebook, Inc.*, 821 F. Supp. 3d 1130, 1142 (N.D. Cal. 2026). BMG may not "select[] only portions of documents that support [its] claims, while omitting portions of those very documents that weaken—or doom—[its] claims." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018).

same way. It asserts that Anthropic trained Claude to create a statistical map of human language. AC ¶ 33. Claude uses training data to calculate "how close words appear to other specific words, revealing to the model words with similar meanings and uses." AC ¶ 33. Claude then relies on these statistical relationships "to generate human-like outputs" in response to users' prompts. AC ¶ 35. So Claude's outputs, like those in *GitHub*, are new works that never contained BMG's CMI in the first place.

BMG's conclusory allegations that Claude reproduced lyrics do not save its DMCA claim. AC ¶ 82. The *GitHub* plaintiffs also alleged that the LLM's outputs could be "substantially similar" to their copyrighted works. 2026 WL 2728464, at *7. And the Ninth Circuit explained "that many copyright cases involve the creation of a work that is substantially similar to the plaintiff's without attribution." *Id.* But the court recognized "[i]f that were all it took to violate section 1202(b), the DMCA would supplant traditional copyright protections and subject defendants to potentially ruinous liability under the DMCA's enhanced statutory damages." *Id.* So it "decline[d] plaintiffs' invitation to transform run-of-the-mill copyright-infringement claims into DMCA claims." *Id.*

BMG's output allegations also lack the "factual content" necessary to make them plausible. *Iqbal*, 556 U.S. at 678. BMG does not identify any lyrics reproduced without CMI. "[W]ithout providing any facts to identify which [works] had CMI removed or to describe what the removed or altered CMI was, [a plaintiff] has not sufficiently stated a claim under Section 1202(b)(1) with respect to removal." *Free Speech Sys., LLC v. Menzel*, 390 F. Supp. 3d 1162, 1175 (N.D. Cal. 2019). BMG's references to distribution are even more conclusory, "reiterat[ing] the legal standard" with "no facts in support." *Id.*; AC ¶¶ 79, 124, 128. BMG cannot state a claim "without identifying what CMI was removed prior to distribution and how that distribution was accomplished." *Free Speech*, 390 F. Supp. 3d at 1175.

**B. BMG Does Not Plausibly Allege That Anthropic Removed CMI In Training**

BMG's training theory also fails to state a claim. The DMCA only prohibits removal of CMI from copyrighted works as a whole. *GitHub*, 2026 WL 2728464, at *1; *Andersen*, 744 F. Supp. 3d at 970-71; *Dolls Kill, Inc. v. Zoetop Bus. Co.*, 2022 WL 16961477, at *3 (C.D. Cal. Aug. 25, 2022); *Falkner v. General Motors LLC*, 393 F. Supp. 3d 927, 938-39 (C.D. Cal. 2018). *GitHub* explicitly

contrasted "an existing work" to "excerpts," explaining that CMI itself is "information conveyed in connection with copies . . . ***of a work***, not in connection with ***excerpts*** or derivative works." *GitHub*, 2026 WL 2728464, at *5. Because identifying information attached to "excerpts" does not constitute CMI, *id.*, removing that information from a portion of the work cannot violate the DMCA. Any other rule would require appending CMI every time someone shared a clip of a movie or a quote from an article online.

BMG does not plausibly allege that Anthropic removed CMI from whole works. Rather, BMG alleges that it holds copyrights in musical compositions (music and lyrics). *E.g.*, AC ¶ 21. Those compositions are the existing protected works. But the complaint's references to removing CMI from compositions are entirely conclusory. *See, e.g.*, AC ¶¶ 33, 81, 124-127. BMG does not describe how or when Anthropic removed CMI from any source containing the musical compositions. The only specific allegations about removal concern using extractor tools to "remove[] BMG's CMI ***from lyrics***" scraped from publicly available webpages or third-party datasets. AC ¶¶ 32, 43, 81. That is not enough.

BMG also makes conclusory allegations that Anthropic removed CMI from torrented works. AC ¶¶ 81, 127. It asserts, for example, that "Anthropic knowingly removed or altered CMI from torrented works as it did with copies of BMG's works that Anthropic pirated from various other sources." AC ¶ 81. BMG's bare recitation of the statutory elements does not state a claim under *Twombly* and *Iqbal*.

### C. BMG Does Not Plausibly Allege The Required Double Scienter

Section 1202(b) of the DMCA includes a demanding double-scienter standard. A person must have (1) "intentionally remove[d]" CMI, or "distribute[d]" copies of works knowing CMI was removed, and (2) done so while having reasonable grounds to know their conduct would "induce, enable, facilitate, or conceal" infringement. 17 U.S.C. § 1202(a)-(b). BMG does not plausibly allege the second element for any of its DMCA theories.

*First*, BMG's output allegations are conclusory. BMG does not allege that removing CMI from outputs "will make it easier to use a copyrighted [work] undetected" or "impair [the copyright owner's] policing of infringement." *Stevens v. Corelogic, Inc.*, 899 F.3d 666, 675-76 (9th Cir. 2018).

At most, BMG alleges that "someone ***might*** be able to use [the works] undetected." *Id.* at 673 (emphasis original). But that "simply identifies a general possibility that exists whenever CMI is removed." *Id.* at 673-74. "[T]he mental state requirement in Section 1202(b) must have a more specific application than the universal possibility of encouraging infringement." *Id.* BMG does not make "specific allegations as to how identifiable infringements 'will' be affected." *Id.* at 674. Binding precedent holds those allegations are "necessary." *Id.*

The only outputs in the complaint demonstrate BMG's scienter allegations are implausible. Each contains information identifying the artist and song. AC ¶¶ 58-63. As this Court explained in *Concord I*, allegations that "some outputs ***do*** include attribution for lyrics" "arguably undermine [the] theory that Anthropic intentionally removes CMI by design because they suggest that CMI was not removed across the board—intentionally or otherwise—during Claude's training process." *Concord Music Grp., Inc. v. Anthropic PBC*, 2025 WL 4808984, at *7 (N.D. Cal. Oct. 6, 2025). BMG's "contradictory" allegations again warrant dismissal. *Id.*; *accord Tremblay v. OpenAI, Inc.*, 716 F. Supp. 3d 772, 779 (N.D. Cal. 2024) (outputs with identifying information undermined scienter).

*Second*, BMG's training allegations fail to explain how "removal of CMI from [data] collected in a non-public database conceals infringement." *Intercept Media, Inc. v. OpenAI, Inc.*, 767 F. Supp. 3d 18, 30 (S.D.N.Y. 2025). BMG does not, for example, allege that any entity other than Anthropic had access to Claude's training materials. *See id.* at 31 (citing failure to allege defendant "exchanged training sets" with another developer). And as in *Tremblay*, BMG has "not shown how omitting CMI in the copies used in the training set gave Defendant[] reasonable grounds to know that [its LLM's] output would induce, enable, facilitate, or conceal infringement." 716 F. Supp. 3d at 779; *accord O'Neal v. Sideshow, Inc.*, 583 F. Supp. 3d 1282, 1288 (C.D. Cal. 2022) (dismissal when no allegations described how "removal or alteration of [the plaintiff's] CMI would likely result in future infringement").

BMG's conclusory allegations instead parrot the statute. AC ¶ 83 ("By removing and altering BMG's CMI in this fashion, Anthropic knowingly conceals its infringement of BMG's copyrights"); AC ¶ 129 ("Anthropic knew or had reasonable grounds to know that these acts would

induce, enable, facilitate, or conceal an infringement of BMG's copyrighted works"); *see also* AC ¶¶ 32, 79, 81, 124. But BMG must allege more than "threadbare recitals" that a defendant had "reasonable grounds to know[] that it w[ould] induce, enable, facilitate, or conceal an infringement." *Logan v. Meta Platforms, Inc.*, 636 F. Supp. 3d 1052, 1064 (N.D. Cal. 2022).

BMG's intent allegations are far less specific than in *Concord I*. There, the Court allowed the claim to proceed past the pleading stage because of allegations about the decision to use one extractor tool over another, citing paragraphs 67 through 74 of the complaint. *Concord Music Grp.*, 2025 WL 4808984, at *4. Those paragraphs alleged specific conversations involving Anthropic executives. *Id.* The *Concord I* plaintiffs had claimed the executives decided to use the Newspaper extractor instead of jusText specifically because it removed CMI better. *Id.* The plaintiffs alleged that this improved removal "would prevent the models from displaying such information alongside Publishers' lyrics in outputs, thereby concealing Anthropic's infringement." First Am. Compl. ¶ 74, *Concord I* (Apr. 25, 2025), Dkt. 337 ("*Concord I* FAC"). BMG replaces these paragraphs of allegations with a handful of sentences and the conclusory assertion that "Anthropic believed Newspaper did a better job removing CMI, including footnotes containing identifying information, copyright owner names, and copyright notices." AC ¶ 32. And unlike the *Concord I* plaintiffs, BMG does not describe how this choice supposedly concealed infringement. *Concord I* FAC ¶ 74.

**III. The Court Should Dismiss These Claims With Prejudice**

A court should dismiss with prejudice "if it is clear that the complaint could not be saved by amendment." *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1051 (9th Cir. 2008). Because *GitHub* bars BMG's DMCA claim, amendment would be futile. *Supra* pp.7-9. BMG cannot amend around the nature of an LLM, or make new allegations that contradict its existing description of how Claude functions. *Opperman*, 84 F. Supp. 3d at 988 (when amended allegations are "contradicted by Plaintiff's earlier allegations, the latest allegations are implausible, and the Court will not accept them as true").

The Court should also dismiss with prejudice because BMG "has already had an opportunity to cure" the defects in its complaint by amending but "failed to do so." *Scilex Pharms., Inc. v. Sanofi-Aventis U.S. LLC*, 2022 WL 20286688, at *8 (N.D. Cal. Feb. 24, 2022). Here, BMG had "the benefit

of a pre-motion letter from [the] Defendant outlining the proposed grounds for dismissal." *Kling v. World Health Org.*, 532 F. Supp. 3d 141, 153 (S.D.N.Y. 2021). On infringement in outputs, Anthropic wrote that "BMG's complaint lacks any allegations of specific examples of outputs that purportedly infringe BMG's copyrights." Burrell Decl. Ex. A at 1. In response, BMG amended to add six alleged examples of Claude outputs containing lyrics from the pre-suit investigation in *Concord I*. It added no allegation that would support infringement by outputs after *Concord I*, presumably because it did not have a basis to make that allegation. On the DMCA, Anthropic wrote that "allegations that Anthropic stripped CMI from BMG's ***lyrics*** do not state a claim because the DMCA only prohibits removal of CMI from copyrighted ***works***." *Id.* at 3-4. Anthropic explained that "[h]ere, those works are BMG's musical compositions, not its lyrics alone." *Id.* BMG continues to allege removal from lyrics rather than its copyrighted musical compositions. *See supra* pp.8-9.

**CONCLUSION**

The Court should dismiss with prejudice Count I for outputs from models post-dating the *Concord I* complaint and Count III in its entirety.

Date: October 13, 2026

<u>*/s/ Sonal N. Mehta*</u>

ARI HOLTZBLATT (SBN 354361)
ari.holtzblatt@wilmerhale.com
ROBIN C. BURRELL (*Pro Hac Vice*)
robin.burrell@wilmerhale.com
**WILMER CUTLER PICKERING HALE AND DORR LLP**
2100 Pennsylvania Ave, NW
Washington, DC 20037
Telephone: (202) 663-6000

ALEX W. MILLER (*Pro Hac Vice*)
alex.miller@wilmerhale.com
JARED V. GRUBOW (*Pro Hac Vice*)
jared.grubow@wilmerhale.com
**WILMER CUTLER PICKERING HALE AND DORR LLP**
250 Greenwich Street
New York, NY 10007
Telephone: (212) 230-8800

SONAL N. MEHTA (SBN 222086)
sonal.mehta@wilmerhale.com
**WILMER CUTLER PICKERING HALE AND DORR LLP**
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Telephone: (650) 858-6000

LOUIS W. TOMPROS (*Pro Hac Vice*)
louis.tompros@wilmerhale.com
**WILMER CUTLER PICKERING HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000

*Attorneys for Defendant*
**ANTHROPIC PBC**